UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT OFFICE OF | : | Civil Action No.  3:03CV1352 (RNC) |
| PROTECTION AND ADVOCACY | : | |
| FOR PERSONS WITH DISABILITIES; | : | |
| JAMES MCGAUGHEY, Executive | : | |
| Director, Office of Protection and | : | |
| Advocacy for Persons with Disabilities, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WAYNE CHOINSKI, Warden, | : | |
| Northern Correctional Institution, | : | |
| in his official capacity; | : | |
| GIOVANNY GOMEZ, Warden, | : | |
| Garner Correctional Institution, | : | |
| in his official capacity; and | : | |
| THERESA C. LANTZ, Commissioner, | : | |
| Connecticut Department of Correction, | : | |
| in her official capacity; | : | |
| | : | |
| Defendants. | : | June 9, 2004 |

### PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION FOR AN ORDER ALLOWING
### ACCESS TO PRISONER HEALTH RECORDS

## I.    INTRODUCTION

Plaintiffs State of Connecticut Office of Protection & Advocacy for Persons with

Disabilities ("OPA") and its Director, James McGaughey, brought this suit pursuant to 42

U.S.C. §1983 in August, 2003, to challenge the conditions of confinement of prisoners

with mental illness at Northern Correctional Institution ("NCI") and Garner Correctional Institution ("GCI").  Plaintiffs contended that prisoners and detainees with mental illness in both institutions were confined under conditions which caused them great suffering and exacerbation of their mental illness, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

OPA is responsible for providing protection and advocacy services to individuals with disabilities.  See Conn. Gen. Stat. §46a-7 et seq.  Conn. Gen. Stat. §46a-8 defines "person with a disability" to include "any person who has a … mental … disability or disfunction which constitutes a significant obstacle to such person's ability to function normally in society …."  Pursuant to Conn. Gen. Stat. §46a-11(4), Mr. McGaughey has the duty and power to "act as an advocate for any person with a disability and initiate or fund legal actions to protect the rights of any person with a disability."

OPA is also designated under the Federal Protection & Advocacy for Individuals with Mental Illness Act (PAIMI) as the agency in Connecticut responsible for providing protection and advocacy services for persons with mental illness.  See 42 U.S.C. §10801 *et seq.*  Under PAIMI, OPA is authorized to investigate suspected incidents of abuse and neglect and to pursue administrative, legal and other remedies on behalf of individuals with mental illness wherever programs for such individuals are operated within Connecticut or within the State's control.  See 42 U.S.C. §10805.

2

Defendant Wayne Choinski is the Warden of NCI, defendant Giovanny Gomez is the Warden of GCI, and defendant Theresa C. Lantz is Commissioner of the Connecticut Department of Correction ("CDOC").

As detailed in plaintiffs' Complaint, prisoners with serious mental illness in the administrative segregation program at NCI were subjected to social isolation and sensory deprivation that approached the limits of human endurance. Their mental illness led to behavior that blocked progression out of these conditions and subjected them to the use of excessive force. At the same time, despite overwhelming need, mental health services at NCI were systematically inadequate. While conditions at GCI were less oppressive, prisoners with mental illness at GCI were still subjected to harsh conditions and inadequate treatment. For a more complete description of conditions at NCI and GCI, see plaintiffs' Complaint, paragraphs 15-31 at pp. 5-9.

After instituting this action, plaintiffs' counsel contacted counsel for defendants and invited them to explore whether the case could be settled. Defense counsel accepted this invitation and, after months of hard work by counsel and clients alike, and with the valuable assistance of Magistrate Judge Martinez, a settlement agreement was signed on March 8, 2004. The agreement was submitted to the legislature on March 31, 2004. It was approved on April 30, 2004, pursuant to Conn. Gen. Stat. § 3-125a. A copy of the agreement is attached as **Exhibit A**.

The agreement runs for three years. <u>See</u> Ex. A, Section B.17., first paragraph, p. 16. During these three years, compliance with the agreement will be evaluated by two sets of two expert consultants: one set for mental health issues and one set for custody issues. <u>See</u> <u>id.</u>, p. 17. One member of each set is appointed by plaintiffs and the second member by defendants. <u>Id.</u> The consultants are to "be given continued access to GCI and NCI to monitor compliance with this agreement." <u>Id.</u>

Further,

> [a]s part of their assessment function the consultants shall have full access to the two facilities and all documents not covered by the attorney-client or work product privileges in the defendants' possession or control that pertain to NCI and GCI, except documents maintained by CDOC that relate to facility security operations ...."

<u>Id.</u>

The parties could not, however, agree on how the consultants would be given access to prisoner health records. Plaintiffs believe that these records may be disclosed pursuant to an appropriate court order, without notice to or consent by prisoners. Defendants contend that notice to, and consent by, a prisoner is a precondition to any disclosure. The parties agreed to submit the issue to this Court. <u>See, id.</u>, fourth paragraph, p.17.

## II.    ARGUMENT

Federal law expressly permits the protected disclosure of confidential medical records without prior notice or consent and despite the existence of conflicting state privacy statutes. Because this case involves a federal question, that federal law governs here and compels granting plaintiffs' motion.

### A.    HIPAA Provides For Such Disclosure By Court Order

In 1996, Congress passed the Health Insurance Portability and Accountability Act ("HIPAA"). HIPAA directed the Secretary of Health of Human Services to make regulations concerning the privacy of individuals' identifiable health information. See HIPAA §264(b), (c)(1), 110 Stat. 1936, 2033, 42 U.S.C. § 1320d-2 (notes).[1]

45 C.F.R. §164.512 defines the circumstances under which health information otherwise protected by HIPAA may be used or disclosed "without the written authorization of the individual ... or the opportunity for the individual to agree or object ...." 45 C.F.R. § 164.512(e)(1) describes when such use or disclosure without notice or consent may occur in "the course of any judicial or administrative proceeding." One subsection of that regulation is dispositive of this motion. 45 C.F.R. § 164.512(e)(l)(i) states that use or disclosure without notice or consent may occur "[i]n response to an

---

[1]        "Individually identifiable health information" is defined by § 1171(6) of HIPAA, which is codified at 42 U.S.C. § 1320d(6), as, inter alia, information that relates to "the physical or mental health or condition of an individual [or] the provision of health care to an individual" which "identifies the individual ...."

order of a court or administrative tribunal, provided that the covered entity discloses only the protected information expressly authorized by such order ...."   Plaintiffs seek precisely such an order.[2]

Courts have had no problem in recognizing the effect of the plain terms of 45 C.F.R. § 164.512(e)(l)(i).   "That provision permits health care providers and other covered entities to disclose protected health information without patient consent: (1) in response to a court order, provided only the information specified in the court order is disclosed ...."   National Abortion Federation v. Ashcroft, 2004 WL 555701 (S.D.N.Y. 2004) at *2.[3]   See Law v. Zuckerman, 307 F. Supp. 2d 705, 711 (D. Md. 2004) ("HIPAA outlines the steps to follow in order to obtain protected health information during a judicial proceeding in 45 C.F.R. § 164.512(e).   There are three ways.   First, counsel may obtain a court order which allows the health care provider to disclose 'only the protected

---

[2]    HIPAA also permits, without prior notice or consent, a covered entity such as DOC to "disclose protected health information to a health oversight agency for oversight activities authorized by law, including audits ... or other activities necessary for appropriate oversight of ... [e]ntities subject to civil rights laws for which health information is necessary for determining compliance." 45 C.F.R. § 164.512(d).  HIPAA defines "health oversight agency" as, inter alia, "an agency or authority of ... a State ... or a person acting under a grant of authority from or contract with such public agency ... that is authorized by law ... to enforce civil rights laws for which health information is relevant." 45 C.F.R. § 164.501.  45 C.F.R. § 164.512(d) thus allows DOC to make the requested disclosure of prisoner health records to OPA, its counsel, and its experts without a court order.  Defendants do not agree, however, and plaintiffs perforce are proceeding under 45 C.F.R. § 165.512(e).

[3]    Copies of unreported cases cited in this brief are attached as **Exhibit B**.

health information expressly authorized by such order'"); Hutton v. City of Martinez, 219 F.R.D. 164, 167 (N.D. Cal. 2003) ("Section 164.512 subsection (e) of HIPAA allows disclosure of information in the course of judicial or administrative proceedings. Disclosure may be compelled in response to a court order ...."); National Abortion Federation v. Ashcroft, 2004 WL 292079 (N.D. Ill. 2004) at *3 ("HIPAA allows a hospital such as Northwestern to disclose patient medical records subject to a court order. 45 C.F.R. 164.512(e)(l)(i)"), aff'd, sub nom. Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923 (7th Cir. 2004).[4]

**B.      This Court Should Order Disclosure Of Prisoner Health Records On Appropriate Terms**

Defendants do not dispute that the expert consultants will need access to prisoner health records in order to perform their audit role.  Indeed, the agreement states as much. See p. 4, supra.  Rather, the issue reserved for determination by this Court is whether individual prisoners need to consent for such access to be granted.  As demonstrated above, HIPAA answers that the question in the negative.

It remains to fix the terms upon which disclosure should be ordered.  HIPAA again provides guidance.

---

[4]      The district court in that case went on to hold that state law ultimately controlled the question rather than HIPAA.  This holding was reversed on appeal, see 362 F.3d at 925, though the end result—quashing of the subpoena—remained the same.

45 C.F.R. §164.512(e)(ii) governs the disclosure of protected information in response to a subpoena or discovery request rather than direct court order.  It allows such disclosure, <u>inter</u> <u>alia</u>, when "[t]he parties to the dispute have agreed to a qualified protective order and have presented it to the court ... with jurisdiction over the dispute" or when "[t]he party seeking the protected health information has requested a qualified protective order from such court ...."  45 C.F.R. §164.512(e)(iv)(A)-(B).  45 C.F.R. 164.512(e)(v) defines a "qualified protective order" as an order of the court or stipulation of the parties that

> (A)  Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
> (B)  Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

Plaintiffs suggest that although the requirements of a qualified protective order are not explicitly made a condition of a court order for disclosure issued under 45 C.F.R. §164.512(e)(l)(i), it would be reasonable and appropriate to include them as part of the order requested here.

Thus, plaintiffs propose that this Court order plaintiffs, their counsel, and their expert consultants be given access to NCI and GCI prisoner health records, with the express provision that the records be kept confidential, be used solely for the purpose of evaluating and enforcing compliance with the agreement, and any copies made be

8

returned or destroyed upon termination of the agreement.  Cf.  A Helping Hand, LLC v. Baltimore County, Maryland, 295 F.Supp.2d 585, 592 (D. Md. 2003) ("the HIPAA regulations permit discovery of protected health information so long as a court order or agreement of the parties prohibits disclosure of the information outside the litigation and requires the return of the information once the proceedings are concluded.")

## C.    State Privacy Statutes Are Inapplicable To This Federal Question Case

Defendants have taken the position that prisoner consent is necessary prior to disclosure of their health records because various state statutes impose such a requirement.  This position does not withstand scrutiny.

Several courts have considered the interplay of HIPAA with state privacy statutes or privileges in federal question cases where disclosure of health information is contested.  Without exception, those courts have concluded that federal, not state, law applies and disclosure of health information is therefore controlled by HIPAA rather than state privacy statutes or privileges.  Further, because HIPAA does not distinguish between disclosure of party records and non-party records, non-party status is irrelevant to the outcome.

- In A Helping Hand, LLC v. Baltimore County, Maryland, 295 F. Supp. 585, 592 (D. Md. 2003), a party to an ADA case cited Maryland's statutory patient – psychotherapist privilege as grounds for barring discovery of non-party health records.

The court rejected this argument, noting: "As for the cited Maryland provisions, the privileges they establish are not applicable here because this lawsuit is governed by federal, rather than state, law. See Fed. R. Evid. 501."

- In United States of America ex rel. Mary Jane Stewart v. The Louisiana Clinic, 2002 WL 31819130 (E.D. La. 2002), defendant relied on Louisiana's health care provider/patient privilege law to oppose discovery of property billing and medical records in a False Claims Act *qui tam* action. The court held: "The instant lawsuit is exclusively a federal question case. Realtors assert claims solely under federal law .... Accordingly, Louisiana privilege law concerning production of nonparty patient records does not apply in this action ...." 2002 WL 31819130 at *2 (citations omitted). The court also rejected defendant's claim that because HIPAA does not preempt state privacy laws that are "more stringent" than HIPAA, state law should apply. See id., at *3-*5.

- In National Abortion Federation v. Ashcroft, 2004 WL 555701 (S.D.N.Y. 2004), the court held that HIPAA, rather than New York State law requiring patient consent before disclosure, applied to a subpoena of non-party medical records. "In cases arising under federal law such as this one, privileges against disclosure are generated by principles of federal law." 2004 WL 555701 at *6, citing cases. The court also considered HIPAA's anti-preemption provision, § 264(c)(2), and concluded that while HIPAA did not preempt more stringent state laws, that shield could not be turned into a sword to displace federal law. "Thus, N.Y.C.P.L.R. 4504(a) remains the law in areas in

which New York State has the authority to regulate, but it has not become the law in areas within the federal domain.  Accordingly, New York law does not apply here."  Id. at *5.

- In Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 925 (7th Cir. 2004), the Court of Appeals reversed the District Court's holding that HIPAA's non-preemption of more stringent state laws meant that disclosure of non-party patient records should be governed by Illinois statutes rather than HIPAA.  "Illinois is free to enforce its more stringent medical-records privilege ... in suits in state court to enforce state law and, by virtue of an express provision in Fed. R. Evid. 501, in suits in federal court (mainly diversity suits) as well in which state law supplies the rule of decision.  But the Illinois privilege does not govern in federal-question suits ...."

In sum, federal law supplies the rule of decision in this §1983 case and HIPAA, not Connecticut privacy statutes, governs when and under what conditions health information may be disclosed.  HIPAA expressly allows disclosure of non-party health information without prior notice or consent, provided that an appropriate court order is entered.  This Court should therefore grant plaintiffs' motion and enter such an order.

### D.    Pre-HIPAA Federal Privacy Cases Also Support Granting This Motion

While the analysis need go no further, cases considering privacy rights prior to HIPAA also support granting this motion.

11

In <u>Whalen v. Roe</u>, 429 U.S. 589 (1977), the U.S. Supreme Court held that a state's recording drug prescription information in a centralized computer file did not violate patients' constitutional privacy rights because the state had an interest in controlling distribution of dangerous drugs and measures employed by the state guarded against public disclosure of the information.  <u>Whalen v. Roe</u> thus established the principle that a constitutional privacy claim may be outweighed by the need for a carefully limited disclosure.  <u>See</u> <u>Nixon v. Administrator of General Services</u>, 433 U.S. 425, 457-59 (1977).

The rule of <u>Whalen v. Roe</u> was applied to a challenge to a subpoena of non-party medical records in <u>Schachter v. Whalen</u>, 581 F.2d 35 (2d Cir. 1978).  The court held there that the state's need to investigate physicians for medical misconduct outweighed the patients' privacy rights, especially in light of the guaranteed confidentiality of the records once produced.  <u>See</u> 581 F.2d at 37.

Federal courts have employed a similar balancing test in compelling disclosure of health records in institutional conditions cases, subject to an appropriate protective order. These cases hold that the public interest in vindicating civil rights outweighs individual privacy rights, whether constitutionally or statutorily based.  <u>See</u> <u>Lora v. Bd. of Educ. of City of New York</u>, 74 F.R.D. 565, 587 (E.D.N.Y. 1977) (disclosure ordered of diagnostic and referral files of mentally handicapped children); <u>N.O. v. Callaghan</u>, 110 F.R.D. 637, 646-47 (D. Mass. 1986) (records of patients in mental health facility); <u>Garrity v.</u>

Thomson, 81 F.R.D. 633, 636-37 (D.N.H. 1979) (records of students in school for the mentally retarded); Inmates of Unit 14 v. Rebideau, 102 F.R.D. 122, 127-29 (E.D.N.Y. 1984) (prison staff personnel files including medical information).

Two cases from this district also support disclosure here.

In Doe v. Meachum, 126 F.R.D. 444 (D. Conn. 1989), the court ordered that plaintiffs' counsel and their experts be given access to the medical and mental health records of HIV-positive prisoners, subject to a protective order. Defendants had argued that state privacy laws barred such disclosure, but the court noted that "in a civil rights action brought pursuant to a federal claim, state statutory privileges are not binding." 126 F.R.D. at 449. Plaintiffs' motion to compel production of the records without individual notice or consent was granted.

> Given that disclosure is sought by professionals whose purpose it is to protect the constitutional rights of the plaintiff class, the court finds that it is more important to the interests of justice that the communications be disclosed, under the strict parameters set forth in the protective order, than that the relationship between patient and psychologist/psychiatrist be protected.

126 F.R.D. at 450 (footnote omitted).[5]

---

[5]    While this is not a class action, OPA has a statutory duty to protect the rights of the prisoners whose records are sought. See p. 2, supra. See also OPA v. Armstrong, 266 F.Supp.2d 303, 311-12 (D. Conn. 2003) ("The plain language of PAMII provides Connecticut P&A with the independent authority to pursue legal remedies to ensure the protection of individuals with mental illness."); Oregon Advocacy Center v. Mink, 322

The court reached a similar conclusion in <u>Connecticut Fair Housing Center, Inc.</u>

<u>v. I.S.D.S. Hartford Properties Corp.</u>, 2001 U.S. Dist. Lexis 24008 (D. Conn. 2001)

where, in a Fair Housing Act case, it compelled disclosure of which present and former

tenants and applicants were black or had children.   After balancing the non-parties'

privacy interest with the need for disclosure, the court held:

> The need for full disclosure of facts is necessary to our
> system of justice.  <u>See</u>, <u>e.g.</u>, <u>Burka</u> [v. <u>New York Transit</u>
> <u>Authority</u>, 110 F.R.D. 660, 665 (S.D.N.Y. 1986).]   The
> court notes that full disclosure is most strongly warranted
> in cases, like this one, involving alleged violations of
> federal rights. <u>Id</u>.
>                              ***
> The court finds that the Center's interest in disclosure
> generally outweighs the privacy interests implicated.

2001 U.S. Dist. Lexis 24008 at *7-*8.[6]

HIPAA has already determined the results of the balancing of privacy and the

need for disclosure in favor of disclosure.  These pre-HIPAA cases nevertheless further

support plaintiffs' position by demonstrating that the right to privacy must yield when, as

here, the information is needed to vindicate other constitutionally protected interests.

---

F.3d 1101, 1113 (9th Cir. 2003) ("PAMII ... explicitly authorizes organizations such as
[Oregon's P&A Office] to bring suit on behalf of its constituents ...").  OPA is thus in the
same position that class counsel has to a class.

[6]      While HIPAA was passed in 1996, the regulations at issue did not go into effect
until April 14, 2003, <u>see</u> 45 C.F.R. § 164.534, making that 2001 decision a pre-HIPAA
case.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for an order allowing access to prisoner health records should be granted.

> THE PLAINTIFFS,
> STATE OF CONNECTICUT
> OFFICE OF PROTECTION & ADVOCACY, et al.
>
> BY: _____
> Ben A. Solnit-ct00292
> Tyler Cooper & Alcorn. LLP
> 205 Church Street
> P.O. Box 1936
> New Haven, CT   06509-1910
> Tel. No.: 203.784.8200
> Fax. No.: 203.777.1181
> E-Mail:  solnit@tylercooper.com

Nancy B. Alisberg-ct21321
Office of Protection & Advocacy
60-B Weston Street
Hartford, CT   06120
Tel. No.:  860.297.4300
Fax. No.:  860.566.8714
E-Mail:  nancy.alisberg@po.state.ct.us

David C. Fathi-ct22477
ACLU National Prison Project
733 15th Street, NW, Suite 620
Washington, D.C.   20005
Tel. No.:  202.393.4930
Fax. No.:  202.393.4931
E-Mail:  dfathi@npp-aclu.org

Annette Lamoreaux-ct25769
Connecticut Civil Liberties Union
Foundation
32 Grand Street
Hartford, CT   06106
Tel. No.:  860.247.9823-Ext. 211
Fax. No.:  860.728.0287
E-Mail:  annettel@cclu.org
**ATTORNEYS FOR PLAINTIFFS**