Slip Copy
(Cite as: 2004 WL 292079 (N.D.Ill.))

Page 2

controlled the medical records to be identified by Dr. Hammond, on December 18, 2003, the government served Northwestern with a subpoena pursuant to Federal Rule of Civil Procedure 45. The subpoena sought production of "[a]ll medical records associated with those medical record numbers to be identified by [Dr. Hammond] in response to the discovery demand served upon him" in *NAF.* Accompanying the subpoena was an Order signed by District Judge Richard Conway Casey, who is presiding over the litigation in New York. The Order authorizes Northwestern, as a non-party witness, to disclose to the government the medical records sought by the attached subpoena in accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, §§ 261-264, 110 Stat.1936 (Aug. 21, 1996), and **45 C.F.R. § 164**.512(e)(1)(i). The government has agreed that if Northwestern is ordered by this court to produce the medical records in question, it may initially redact "all patient identifying information" from the records, except for the state of residence of the patient. However, the government has reserved the right to request or subpoena additional patient identifying information in the future. On January 23, 2004, Judge Casey issued an Agreed Protective Order holding that if Northwestern is compelled to disclose the records of Dr. Hammond's patients, it may redact such information as a patient's name, address, phone number, and the like, but the Order does not authorize redaction of a patient's medical history.

*2 Northwestern now moves to quash the subpoena pursuant to Federal Rules of Civil Procedure 45(c)(3)(A)(iii) and (iv). Northwestern asserts that the medical records sought by the subpoena are privileged from disclosure under HIPAA as well as Illinois and federal statutory and common law. Northwestern also claims that production of the medical records in accordance with the subpoena would impose an undue burden on Northwestern and its patients.

DISCUSSION

A district court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter and no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(A)(iii); *Abbott v. Kidder, Peabody & Co.,* 1997 WL 337228, *2 (N.D.Ill.1997). Northwestern argues that the medical records sought by the government cannot be released under Illinois law, which provides for strict disclosure protections under the physician-patient privilege, and are therefore protected under HIPAA. The government counters that federal law governs this case and because federal common law does not recognize a physician-patient privilege, the medical records of Dr. Hammond's patients must be disclosed subject to the subpoena.

HIPAA

Recognizing "the importance of the privacy of medical records," *U.S. v. Sutherland,* 143 F.Supp.2d 609, 612 (W.D.Va.2001), Congress addressed the issue when it enacted HIPAA in 1996. One provision of HIPAA directed the Secretary of Health and Human Services (the "Secretary") to promulgate final regulations setting standards "with respect to the privacy of individually identifiable health information" such as patient medical records. HIPAA, Pub.L. No. 104-191, § 264(a), 110 Stat.1936 (1996); *Sutherland* at 612. The federal regulation covering the disclosure of protected patient medical records is **45 C.F.R. § 164**.512. *Sutherland* at 612; *U.S. ex rel. Stewart v. Louisiana Clinic,* 2002 WL 31819130, *3 (E.D.La.2002). [FN1] This regulation allows for the disclosure of non-party medical information "in the course of any judicial or administrative proceeding ... in response to an order of the court." **45 C.F.R. § 164**.512(e)(1)(i). Judge Casey's December 18, 2003, Order thus granted Northwestern the authority to disclose to the government Dr. Hammond's patient's medical records pursuant to **45 C.F.R. § 164.512.** (e)(1)(i). However, Judge Casey's authorization Order does not end our inquiry into whether the medical records at issue are privileged from disclosure under other aspects of HIPAA.

> FN1. While HIPAA's regulations became effective on April 14, 2001, *Sutherland* at 612 (citing 66 Fed.Reg. 12,434 (Feb. 26, 2001)), compliance by hospitals was not required until April 14, 2003. 45 C.F.R. § 164.534(a).

HIPAA contains a preemption provision that the statute and the regulations promulgated by the Secretary thereunder expressly "supercede [sic] any

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 292079 (N.D.Ill.))

Page 3

contrary provision of State law," 42 U.S.C. § 1320d-7(a)(1) (implemented by 45 C.F.R. § 160.203). HIPAA's preemption over state medical privacy laws is not absolute, as HIPAA and its subsequent regulations do not preempt state law if the state law is "contrary" to HIPAA and "relates to the privacy of individually identifiable health information" such as patient medical records. *Id.* § 1320d7-(a)(2)(b) (implemented at 45 C.F.R. § 160.203(b)); *Louisiana Clinic* at *3. A state law is "contrary" to HIPAA and its regulations if a "covered entity would find it impossible to comply with both the State and federal requirements." 45 C.F.R. § 160.202. A contrary state health information privacy law will not be preempted by a HIPAA regulation if the state law is "more stringent" than HIPAA's requirements. 45 C.F.R. § 160.203(b); *Louisiana Clinic* at *3. A state privacy law is "more stringent" than a HIPAA requirement if the state law "prohibits or restricts a use or disclosure in circumstances under which such use or disclosure otherwise would be permitted" under HIPAA. 45 C.F.R. § 160.202. We must then ask if Illinois medical information privacy laws are more stringent than HIPAA's requirements.

*3 As mentioned above, HIPAA allows a hospital such as Northwestern to disclose patient medical records subject to a court order. **45 C.F .R. § 164**.512(e)(1)(i). HIPAA does limit the authority of a court by requiring that the order:
[p]rohibit[ ] the parties from using or disclosing the protected health information for any purpose other than the litigation and proceeding for which such information was requested [and r]equires the return ... or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.
**45 C.F.R. § 164**.512(e)(1)(v).

In other words, HIPAA's regulations clearly allow a hospital to disclose patient medical records, when ordered in judicial proceedings, subject to the above limitations.

ILLINOIS MEDICAL PRIVACY LAW

Illinois law concerning when nonparty patient medical records may be disclosed by hospitals or doctors is far more restrictive. The Illinois Code of Civil Procedure states that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient" unless one of eleven enumerated conditions exist. 735 ILCS 5/8- 802. This medical privacy protection extends to hospitals that possess nonparty patient medical records. *Parkson v. Central DuPage Hospital*, 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140, 142 (Ill.App.Ct.1982). Unless one of these conditions is satisfied, absent the patient's consent, a hospital may not disclose a patient's medical records, even in response to a subpoena. *Dep't of Professional Regulation v. Manos*, 326 Ill.App.3d 698, 260 Ill.Dec. 364, 761 N.E.2d 208, 216-17 (Ill.App.Ct.2001) (citing *People v. Bickham*, 89 Ill.2d 1, 6, 59 Ill.Dec. 80, 431 N.E.2d 365 (Ill.1982)). Illinois courts have continued to hold that 735 ILCS 5/8-802's protection applies even if the patients' names and identification numbers are deleted or redacted from their medical records. *See Manos* at 216; *Ekstrom v. Temple*, 197 Ill.App.3d 120, 142 Ill.Dec. 910, 553 N.E.2d 424, 430 (Ill.App.Ct.1990); *Parkson* at 143-44. These courts have reasoned that even if a patient's name and identification number are redacted from his or her file, because prior and present medical history would still be disclosed, the patient's right to confidentiality could potentially be compromised. *Manos* at 216.

While the government states that it would permit Northwestern to redact "all patient identifying information," its subpoena requests information concerning the medical necessity of abortions performed by Dr. Hammond. By demanding the rationale behind the abortions he performed, the subpoena would thereby require Northwestern to disclose medical history information of Dr. Hammond's patients. Further increasing the possibility that Dr. Hammond's patients could be identified despite the government's redaction proposal is the fact that it only seeks patient records from the past two years and requires that the patient's state of residence not be deleted. The proposal simply offers less security of confidentiality than other redaction plans that have been found to infringe on Illinois residents' right to privacy guaranteed by the state's Constitution. *Manos* at 217. While Illinois does not differentiate between the types of medical information that is subject to protection, it is only reasonable that the privilege should not be diluted in a case involving procedures as sensitive and personal as late-term abortions.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 292079 (N.D.Ill.))

Page 4

*4 Neither Northwestern nor the government asserts that any of the conditions of 735 ILCS 5/8-802 have been met that would allow Northwestern to disclose Dr. Hammond's patients' records under the Illinois Code of Civil Procedure. The parties also do not dispute that disclosure of the medical records would violate other provisions of Illinois law such as the Medical Patients Rights Act, 410 ILCS 50/3a(a) and (d), and the Hospital Licensing Act, 210 ILCS 85/6.17(d). Because we find that Illinois law is more stringent than HIPAA's disclosure requirements and that it would be impossible for Northwestern to comply with both Judge Casey's HIPAA-pursuant Order and various provisions of Illinois law, Illinois's nonparty patient privacy laws are not preempted by HIPAA and its subsequent regulations.

HIPAA, F.R.E. 501, and the SUPREMACY CLAUSE

The government argues that because *NAF* is a federal case that applies federal law, the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and Federal Rule of Evidence 501 dictate that Illinois's strict privacy laws should be trumped by federal common law, which does not recognize a physician-patient privilege. [FN2] The Supremacy Clause commands that state laws that "interfere with, or are contrary to the laws of Congress ... must yield" to federal laws. *Gibbons v. Ogden,* 9 Wheat. 1, 22 U.S. 1, 211, 6 L.Ed. 23 (1824). The Seventh Circuit has recently described the Supremacy Clause's application in the following manner: "A conflict between state and federal law, even if not over goals but merely over methods of achieving a common goal, is a clear case for invoking the [Supremacy Clause] to resolve the conflict in favor of federal law." *Wisconsin Bell, Inc. v. Bie,* 340 F.3d 441, 443 (7th Cir.2003), *cert. denied,* --- U.S. ----, 124 S.Ct. 1075, --- L.Ed.2d ----, 2004 WL 47558 (Jan. 12, 2004).

> FN2. Neither the Supreme Court nor the Seventh Circuit has recognized a federal physician-patient privilege. *See Whalen v. Roe,* 429 U.S. 569, 602 n. 28, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977); *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 506-07 (7th Cir.1995). See, however, the Supreme Court's recognition of a psychotherapist-patient privilege, upholding the Seventh Circuit's view, in *Jaffee v. Redmond,* 518 U.S. 1, 8, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

According to the government, this is a clear case for applying the Supremacy Clause to invalidate Illinois' privacy laws by relying on Federal Rule of Evidence 501, which states:
> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court ... the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

F.R.E. 501. As we have already stated, and the parties recognize, there has never been a federal common law physician-patient privilege. Under this proposition the government cites a litany of cases, beginning with *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058 (7th Cir.1981), where federal courts have relied on the Supremacy Clause and Federal Rule of Evidence 501 to hold that state privilege laws cannot be used to hinder discovery in cases governed by federal law. However, it is important to note that all of the cases cited by the government either predate April 14, 2003, the date when HIPAA's regulations became effective, or deal with privileges that are outside of HIPAA's scope.

*5 Because the authorities cited by the government do not contemplate HIPAA, they cannot be read in a vacuum. Federal Rule of Evidence 501 does state that evidentiary privileges should be governed by federal common law, but only "except as otherwise ... provided by Act of Congress." For this reason, HIPAA and the regulations promulgated thereunder, not Federal Rule of Evidence 501, control the protections provided to patient medical records held by hospitals. If the case were otherwise, Congress' directive to the Secretary of Health and Human Services to set standards and regulations "with respect to the privacy of individually identifiable health information," HIPAA, Pub.L. No. 104-191, § 264(a), 110 Stat.1936 (1996), would be rendered meaningless in a regime where Federal Rule of Evidence 501 recognizes no privilege as to such records.

The government contends that to quash its

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 292079 (N.D.Ill.))

Page 5

subpoena as a result of Illinois' privacy laws would violate the Supremacy Clause by a state law trumping federal law. However, because Illinois' privacy protections are activated only through HIPAA's anti-preemption provision, this not a case of Illinois law trumping federal law but instead a case of one federal law displacing another. It surely cannot be the case that the Supremacy Clause is violated when state law is followed pursuant to a federal statute that demands its application. As the government itself points out, state and federal laws are in conflict where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The application of Illinois' medical privacy laws is not an "obstacle" to achieving Congress' aims in enacting HIPAA, but rather appears to be Congress' desired outcome under a statute that contemplates that state medical privacy laws supersede less protective federal regulations. Because HIPAA, not Federal Rule of Evidence 501, governs how individually identifiable health information, such as medical records, should be kept private, Illinois law controls and the government's subpoena must be quashed.

F.R.E. 501 and the PHYSICIAN-PATIENT PRIVILEGE

The government contends that state privileges are honored in federal litigation only when state law supplies the rule of decision. It asserts that when federal law governs, as it does here, only privileges recognized by the national government matter. It argues that because no physician-patient privilege exists under federal common law, Northwestern must produce the records.

As pointed out above, HIPAA's preemption over state privacy laws must yield when state law is stricter than and contrary to HIPAA and the material sought relates to the privacy of individually identifiable health information. That is reason enough to quash the government's subpoena to Northwestern. Beyond that, however, the government's reliance on the absence of an express declaration that Federal Rule of Evidence 501 includes a physician-patient privilege is, in the context of this case, unsupportable.

*6 Federal Rule of Evidence 501 speaks to privileges recognized under "principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The Court of Appeals for the Seventh Circuit concluded that "reason and experience," the touchstones for acceptance of a privilege under Rule 501, compelled recognition of a psychotherapist-patient privilege. *Jaffee v. Redmond*, 51 F.3d 1346, 1355 (7th Cir.1995). Psychotherapists and patients share a unique relationship, in which the ability to communicate freely without the fear of public disclosure is the key to successful treatment. The Supreme Court agreed with that holding and the recognition of the privilege.

It can be no less when dealing with a woman, her doctor, and the necessity to make a decision on abortion, issues indisputably of the most sensitive stripe. American history discloses that the abortion decision is one of the most controversial decisions in modern life, with opprobrium ready to be visited by many upon the woman who so decides and the doctor who engages in the medical procedure. An emotionally charged decision will be rendered more so if the confidential medical records are released to the public, however redacted, for use in public litigation in which the patient is not even a party. Patients would rightly view such disclosure as a significant intrusion on their privacy.

That result is to be contrasted with the loss to the government if the physician-patient privilege were found to exist in these circumstances. The government seeks these records on the *possibility* that it may find something therein which would affect the testimony of Dr. Hammond adversely, that is, for its potential value in impeaching his credibility as a witness. What the government ignores in its argument is how little, if any, probative value lies within these patient records and the ready availability of information traditionally used to challenge the veracity of Dr. Hammond's scientific assertions and medical opinions. The presence or absence of medical risks, their likelihood and nature are undoubtably described and discussed in available medical literature. Challenges to Dr. Hammond's views would be readily available, as would the enlistment of experts supporting contrary opinions. The search for the truth that any hearing or trial seeks to produce would hardly be infringed by finding that a physician-patient privilege exists in these circumstances. When contrasted with the potential

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2004 WL 292079 (N.D.Ill.))

Page 6

loss of privacy that would ensue were these medical records used in a case in which the patient was not a party, the balance of harms resulting from disclosure severely outweighs the loss to the government through non-disclosure. Reason and experience dictate that Federal Rule of Evidence 501 indeed recognizes a physician- patient privilege in the circumstances of this case, that is, matters relating to abortion. We so hold.

## CONCLUSION

*7 Based on the foregoing analysis, Northwestern's motion to quash the government's subpoena is granted.

2004 WL 292079 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31819130 (E.D.La.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.

UNITED STATES OF AMERICA ex rel. Mary
Jane Stewart et al.
v.
THE LOUISIANA CLINIC et al.

No. Civ.A. 99-1767.

Dec. 12, 2002.

*ORDER AND REASONS*

WILKINSON, Magistrate J.

*1 This is a qui tam action in which relators, Mary Jane Stewart, Jr. and Margaret Catherine McGinity, seek to recover damages on behalf of themselves and the United States under the False Claims Act. 31 U.S.C. § 3729. Relators allege that defendants defrauded the federal government by presenting false claims for reimbursement for medical services provided to Medicare and Medicaid participants.

Defendant, Dr. Stephen Flood, filed a motion for protective order, which addresses the confidentiality of nonparty patients' medical records that relators have asked defendants to produce. Dr. Flood's motion also requests that the United States, which has previously declined to intervene in this action, be prohibited from receiving copies of any nonparty patient records produced by the parties. Record Doc. No. 94. Dr. Flood received leave to file a supplemental memorandum. Record Doc. Nos. 95, 96. The remaining defendants, Dr. Stuart I. Phillips, Dr. Bernard L. Manale, Dr. Ida Fattel and Dr. John Watermeier, and a former defendant, The Louisiana Clinic, [FN1] also moved for a protective order on the same legal grounds but requested a slightly different protective order. Record Doc. No. 99.

FN1. Although the Louisiana Clinic was dismissed from this action, it joins in the motion because it asserts that it, not the physicians, controls the patient records at issue. It also asserts that it has never been served with any discovery requests for the records. The instant motions are not motions to compel and the court makes no order respecting any outstanding discovery requests.

Relators filed a timely opposition memorandum. Record Doc. No. 103. The United States filed a memorandum in response to the two motions for protective order. Record Doc. No. 104. Dr. Flood received leave to file another supplemental memorandum. Record Doc. Nos. 105, 106.

Having considered the complaint, as amended; the record; the submissions of the parties; and the applicable law, and for the following reasons, IT IS ORDERED that defendants' motions for a protective order are GRANTED IN PART AND DENIED IN PART, as discussed below.

*ANALYSIS*

Defendants seek a protective order concerning disclosure of nonparty patient billing and medical records in response to relators' requests for production of documents. Defendants argue that if they are compelled to produce such records without concealing individual identifying information, they may incur civil liability to the nonparty patients under Louisiana law for unauthorized disclosure of confidential medical information. They seek an order allowing them to produce the documents only after all patient identifying information has been redacted. Dr. Flood suggests that the redacted information be replaced with a system that identifies each patient only by a number. Defendants rely on the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, §§ 261-264, 110 Stat.1936 (1996), and its implementing regulations to argue that the Louisiana health care provider/patient privilege is *not* preempted by HIPAA and that the court must

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 31819130 (E.D.La.))**

Page 2

therefore follow Louisiana privilege law in deciding how the documents should be produced.

Defendants also argue that the United States, which has elected not to intervene in this action and is therefore technically a nonparty, is not entitled to receive copies of nonparty patient records. They argue alternatively that if the government is entitled to receive copies, it must be prohibited from using those records for any purpose other than this litigation.

A. *There Is No Doctor/Patient Privilege in Federal Question Cases*

**\*2** Defendants acknowledge that, under Fed.R.Evid. 501, privilege questions are generally governed by federal common law unless otherwise required by federal law. Thus, privilege questions are governed by the federal courts' interpretation of federal common law, except when state law supplies the rule of decision, in which case state law on privilege governs. Fed.R.Evid. 501; *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir.1992); *Robertson v. Neuromed. Ctr.*, 169 F.R.D. 80, 81-82 (M.D.La.1996) (Riedlinger, M.J.); *Soriano v. Treasure Chest Casino, Inc.*, No. 95-3945, 1996 WL 736962, at \*2 (E.D.La. Dec.23, 1996) (Berrigan, J.).

The instant lawsuit is exclusively a federal question case. Relators assert claims solely under federal law. "Rule 501 makes it clear that state privilege law will apply in diversity cases, and that federal privilege law will apply in federal question cases." *In re Combustion, Inc.*, 161 F.R.D. 51, 53 (W.D.La.1995) (Tynes, M.J.), *aff'd*, 161 F.R.D. 54 (W.D.La.1995) (Haik, J.).

Accordingly, Louisiana privilege law concerning production of nonparty patient records does not apply in this action brought solely under federal statutory law. *See Marshall v. Spectrum Medical Group*, 198 F.R.D. 1, 2000 WL 1824428, at \*4-5 (D.Me. Dec.8, 2000) (Maine hospital peer review records privilege does not apply in Americans with Disabilities Act case); *Burrows v. Redbud Community Hosp. Dist.*, 187 F.R.D. 606, 608-09 (N.D.Cal.1998) (California peer review records privilege does not apply in Emergency Medical Treatment and Active Labor Act case); *Syposs v. United States*, 179 F.R.D. 406, 409 (W.D.N.Y.1998) (New York medical peer review privilege does not apply in action under Federal Tort Claims Act), *adhered to on reconsideration*, 63 F.Supp.2d 301 (W.D.N.Y.1999); *Robertson*, 169 F.R.D. at 82 (Louisiana hospital peer review records privilege does not apply in Americans with Disabilities Act case with pendent state law claims); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.1988) (New York law protecting personnel records of police officers from disclosure not applicable in federal civil rights action); *Lewis v. Radcliff Mat'ls, Inc.*, 74 F.R.D. 102, 103-04 (E.D.La.1977) (Louisiana privilege for state unemployment compensation records not applicable in Title VII case). The court therefore applies federal privilege law in this federal question case.

Defendants concede that there is no federal physician/patient privilege. [FN2] *Whalen v. Roe*, 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Gilbreath v. Guadalupe Hosp. Found. Inc.*, 5 F.3d 785, 791 (5th Cir.1993); *United States v. Moore*, 970 F.2d 48, 50 (5th Cir.1992); *accord Hingle v. Board of Admins. of Tulane Educ. Fund*, No. 95-0134, 1995 WL 731696, at \*3 (E.D.La. Dec.7, 1995) (Vance, J.)). Their arguments center on the provisions of HIPAA and its regulations, which they contend direct the court to apply Louisiana privilege law. The parties have cited no cases, and my own research has located none, that address what appears to me to be a question of first impression.

> FN2. The Supreme Court recognized a limited psychotherapist/patient privilege in *Jaffee v. Redmond*, 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), but none of the parties to the instant lawsuit argue that this privilege applies.

B. *HIPAA Does Not Require the Court to Apply Louisiana Privilege Law*

**\*3** HIPAA delegates to the Secretary of Health and Human Services broad authority to promulgate Standards for Privacy of Individually Indentifiable Health Information ("Standards"), with which health care providers must comply. 42 U.S.C. §§ 1320d-1(d), 1320d-3(a)(b), 1320d-4(b). The Standards generally permit a health care provider (called a "covered entity") to disclose nonparty patient records during a lawsuit, *subject to an*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                                                              Page 3
**(Cite as: 2002 WL 31819130 (E.D.La.))**

*appropriate protective order*, without giving notice to the nonparty patients.

HIPAA and the Standards promulgated by the Secretary expressly "supercede [sic] any contrary provision of State law," 42 U.S.C. § 1320d- 7(a)(1) (implemented by 45 C.F.R. § 160.203 (2002)), *except* as provided in 42 U.S.C. § 1320d-7(a)(2) (implemented by 45 C.F.R. § 160.203(b)). Under that exception, HIPAA and its Standards expressly do *not* preempt contrary state law, *id.* § 1320d-7(a)(2), *if* the state law "relates to the privacy of individually identifiable health information," *id.* § 1320d- 7(a)(2)(B) (implemented at 45 C.F.R. § 160.203(b)), and is "more stringent" than HIPAA's requirements. Pub.L. 104-191, § 264(c)(2), 110 Stat.1936 (published in the Historical and Statutory Notes to 42 U.S.C. § 1320d-2; implemented at 45 C.F.R. § 160.203(b)).

Defendants contend that HIPAA's disclosure provision is less stringent than Louisiana law. Louisiana law requires notice to the patient and a contradictory hearing that includes the patient before a health care provider can produce nonparty patient records without the patient's consent. Thus, defendants argue that Louisiana law is more stringent than HIPAA in this area, that HIPAA does not preempt Louisiana law and that Louisiana privilege law must be applied.

The Secretary has promulgated final Standards under HIPAA. *United States v. Sutherland*, 143 F.Supp.2d 609, 612 (W.D.Va.2001) (citing 65 Fed.Reg. 82,462 (Dec. 28, 2000)). Although those regulations were effective on April 14, 2001, full compliance by health care providers is not required until April 14, 2003. *Id.* (citing 66 Fed.Reg. 12,434 (Feb. 26, 2001)); 45 C.F.R. § 164.534.

In the instant case, relators and the United States argue that the HIPAA Standards do not apply because the final compliance date for health care providers is April 14, 2003. In this regard, I agree with District Judge Jones of the Northern District of Virginia, who stated:
> Nevertheless, the Standards indicate a strong federal policy to protect the privacy of patient medical records, and they provide guidance to the present case. In [45 C.F.R.] § 164.512(e), the regulations define when and how disclosures are permitted for judicial and administrative proceedings. .... Although not presently binding on the Hospital or this court, I find these regulations to be persuasive in that they demonstrate a strong federal policy of protection for patient medical records.

*Sutherland*, 143 F.Supp.2d at 612. Moreover, the Standards will require full compliance in a mere four months, at a time when this lawsuit will still be ongoing (trial is set for October 2003) and the patient records at issue will be in full use by the parties.

*4 Thus, the court will analyze the HIPAA regulatory scheme. **45 C.F.R. § 164**.512 allows a health care provider to disclose protected health information during judicial proceedings under certain circumstances without the written authorization of the patient or an opportunity for the patient to agree or object to the disclosure.

**Section 164**.512(e) provides in relevant part:
(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
(i) In response to an *order of a court* or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
(ii) In response to a subpoena, *discovery request*, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
(A) The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; [FN3] *or*

> FN3. No such notice or assurances have been given in the instant case.

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from *the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order* that meets the requirements of paragraph (e)(1)(v) of this section. [FN4]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31819130 (E.D.La.))

Page 4

> FN4. Relators have attached a proposed protective order to their opposition memorandum. The definition of "qualified protective order" is discussed below.

....

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

....

(B) *The party seeking the protected health information has requested a qualified protective order* from such court or administrative tribunal.

....

(vi) Notwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, *if the covered entity* makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section *or to seek a qualified protective order* [FN5] sufficient to meet the requirements of paragraph (e)(1)(iv) of this section.

> FN5. The health care providers seek a protective order in this case.

(2) Other uses and disclosures under this section. The provisions of this paragraph *do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures* of protected health information.
**45 C.F.R. § 164.512(e)(1), (2)** (emphasis added).

Defendants argue that HIPAA does *not* preempt Louisiana law concerning disclosure of nonparty patient records without patient consent. As previously noted, HIPAA and its Standards expressly "supercede [sic] any contrary provision of State law," 42 U.S.C. § 1320d-7(a)(1); 45 C.F.R. § 160.203, *unless* the contrary state law "relates to the privacy of individually identifiable health information" and is "more stringent" than HIPAA's requirements. *Id.* § 160.203(b). Thus, to fall under this exception, Louisiana law must (1) be "contrary" to HIPAA or its Standards, (2) relate to the privacy

of individually identifiable health information *and* (3) be "more stringent" than federal law.

*5 Defendants focus solely on the "more stringent" element of this regulatory test and on paragraph (4) of the definition of "more stringent." "More stringent" means a State law that meets one or more of the following criteria:....

> (4) With respect to the form, substance, or the need for express legal permission from an individual, who is the subject of the individually identifiable health information, for use or disclosure of individually identifiable health information, provides requirements that narrow the scope or duration, increase the privacy protections afforded (such as by expanding the criteria for), or reduce the coercive effect of the circumstances surrounding the express legal permission, as applicable.

*Id.* § 160.202.

Defendants argue that the Louisiana health care provider/patient privilege law is more stringent than the federal regulations. They contend that the Louisiana statute increases the privacy protections afforded to individual patients by requiring either patient consent for the disclosure or, in the absence of consent, that a "court shall issue an order for the production and disclosure of a patient's records ... only: after a contradictory hearing with the patient ... and after a finding by the court that the release of the requested information is proper." La.Rev.Stat. § 13:3715.1(B)(5).

Defendants' argument fails because this provision of Louisiana law does not address "the form, substance, or the need for *express legal permission from an individual,"* as required by 45 C.F.R. § 160.202 for the exception to apply. Rather, the Louisiana statute provides a way of negating the need for such permission. In other words, although the individual patient may attend the contradictory hearing, the Louisiana provision states that the court *shall* issue an order for disclosure (despite the patient's lack of consent), if the court finds that release of the information is proper. Because the Louisiana statute does not fit within the exception from preemption cited by defendants, it *is preempted* by the HIPAA regulations. Therefore, Louisiana law does not apply in this pure federal question case.

I find that both relators and defendants have complied with the HIPAA regulations at issue by

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31819130 (E.D.La.))

Page 5

seeking an appropriate protective order and that the court has the authority to order disclosure of nonparty patient information, subject to such a protective order, without conducting a contradictory hearing or having the parties obtain the patients' consent. All parties agree (and I strongly agree) that there is good cause for entry of a protective order concerning the medical records of nonparty patients in this case, Fed.R.Civ.P. 26(c), and that the order should at the very least comply with **45 C.F.R. § 164.512(e)(v)**.

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

*6 (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; [FN6] and

> FN6. The United States does not agree that it should be prohibited from using the information disclosed for purposes outside this litigation. This issue is discussed in the following section.

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.
**45 C.F.R. § 164.512(e)(v)**.

However, defendants want all patient-identifying information redacted before they produce the documents to relators. Dr. Flood suggests that the redacted information be replaced with a system that identifies each patient by a number. Relators propose an alternative method to protect patient records by proposing a "twofold" production in which defendants would produce a set of unredacted documents to be marked "confidential, for counsel's eyes only." Relators propose that the unredacted documents be used only by counsel and their staff (which I find is too broad, as further discussed below), and a second set of redacted documents that may be used by any party for any pretrial purpose.

I find that relators' suggestion for a "twofold" production serves the interests of all parties and of the nonparty patients whose records will be produced. The issue in this case is whether the defendants submitted false claims to the government for reimbursement for services rendered to Medicare and Medicaid patients. Relators must be allowed to see the patient names so that they can investigate the validity of the claims for services rendered to those patients. Restricting such information only to counsel of record, no more than two paralegals and one expert for each party, coupled with the other protections, will satisfactorily protect this confidential information from being disseminated by the non-government parties, outside this litigation.

Accordingly, I find that a form of the "twofold" production proposed by relators, but with disclosure somewhat more restricted than they suggest, should be incorporated in the protective order to be entered herein. To enhance the protection of these sensitive materials while also making them available for the legitimate adjudicative and government oversight functions discussed below, the protective order to be submitted by the parties in accordance with this order must also include the following language:

> All information produced in accordance with this order must be kept confidential and used only for purposes of this litigation and must not be disclosed to any one except parties to this litigation, the parties' counsel of record, no more than two paralegals employed by counsel of record and one expert per party retained in connection with this litigation. All persons to whom such information is disclosed must sign an affidavit that must be filed into the record, agreeing to the terms of the protective order and submitting to the jurisdiction of this Court for enforcement of those terms.

C. *The United States Is a Real Party in Interest Entitled to Receive Discovery*

*7 The final issues are whether the United States is entitled to receive copies of the documents produced and, if so, whether those documents should be in unredacted form and whether the United States should be prohibited from using the documents for purposes other than this litigation. Defendants argue that because the United States declined to intervene, it is a nonparty with no rights to participate in this type of discovery and that it

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works