Not Reported in F.Supp.2d
(Cite as: 2002 WL 31819130 (E.D.La.))

must be ordered to use the documents, if it receives them, solely for purposes of this litigation. Defendants cite no authority for these propositions. Again, these questions appear to be matters of first impression.

For the following reasons, I find that the government may receive unredacted copies of the documents.

"When a False Claims Act suit is initiated by a private person--a qui tam plaintiff or relator--the action is brought 'for the person and for the Government' and is 'brought in the name of the Government.'.... If the government decides not to intervene, the citizen may *conduct* the action." *United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 306 (5th Cir.1999) (quoting 31 U.S.C. § 3730(b)(1); citing 31 U.S.C. § § 3730(b)(2)-(4), (b)(4)(B)) (emphasis added).

While the decision of the government not to intervene in the instant case means that the relators are free to "conduct the action," the United States "is a real party in interest even if it does not control the False Claims Act suit." *Searcy v. Philips Elec. N. Am. Corp.,* 117 F.3d 154, 156 (5th Cir.1997). However, "[t]he peculiar nature of the government's relation to a qui tam suit," *Russell,* 193 F.3d at 306, means that although the United States is a real party in interest, it "may be a relevant party in the suit for *some* purposes of the litigation." *Id.* (citing *United States ex rel. Foulds v. Texas Tech Univ.,* 171 F.3d 279, 289, 291 (5th Cir.1999)) (emphasis added). The question in this case is whether unfettered access to documents produced in discovery falls within those relevant purposes.

The United States retains control over several aspects of the litigation.

> [E]ven in cases where the government does not intervene, there are a number of control mechanisms present in the qui tam provisions of the FCA [False Claims Act] so that the [United States] nonetheless retains a significant amount of control over the litigation.... [T]he FCA clearly permits the government to veto settlements by a qui tam plaintiff even when it remains passive in the litigation.... [N]ot only may the government take over a case within 60 days of notification, but it may also intervene at a date beyond the 60-day period upon a showing of good cause.... [T]he government retains the unilateral power to

dismiss an action notwithstanding the objections of the person.

> In *United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* we held that parties, in a qui tam suit filed under the FCA in which the United States does not intervene, have 60 days to file a notice of appeal under Rule 4(a)(1) of the Federal Rules of Civil Procedure. We similarly stated in *Russell* that although the government does not intervene, its involvement in the litigation nonetheless continues. We noted, for example, that, in addition to the control mechanisms already stated in *Searcy,* the government may request that it be served with copies of pleadings and be sent deposition transcripts ... [and it] may pursue alternative remedies, such as administrative proceedings. We also noted that despite the government's non-intervention, it receives the larger share of any recovery, amounting to up to 70% of the proceeds of a lawsuit.
> *8 ....
> Furthermore, the FCA itself describes several additional ways in which the United States retains control over a lawsuit filed by a qui tam plaintiff. In the area of settlement, for example, the government may settle a case over a relator's objections if the relator receives notice and hearing of the settlement. Additionally, in the area of discovery, if the government shows that discovery initiated by a qui tam plaintiff would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay the discovery for sixty days or more, whether or not the government intervenes.

*Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749, 753-54 (5th Cir.2001) (quotations omitted) (citing 31 U.S.C. §§ 3730(b), (c), (d); *Russell,* 193 F.3d at 306, 307; *Searcy,* 117 F.3d at 159-60)); *see also id.* at 756 n. 10 (citing cases from other circuits concerning same control mechanisms). In addition, a qui tam action may not be dismissed without the government's consent. 31 U.S .C. § 3730(b)(1).

> However, the government's decision not to intervene is not meaningless. The structure [of the False Claims Act] distinguishes between cases in which the United States is an active participant and cases in which the United States is a passive beneficiary of the relator's efforts. When the government chooses to remain passive, as it has here, we see no reason to treat it as a party with standing to challenge the district court's action as

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31819130 (E.D.La.))

Page 7

of right.

*Searcy,* 117 F.3d at 156. Thus, the *Searcy* court rejected the government's argument that it was automatically a party when it sought to appeal a settlement that the district court had approved over the government's objection, without intervening in the district or appellate court. *Id.* Nonetheless, the Fifth Circuit granted the United States the right to appeal the settlement without intervening for three reasons. First, the United States participated in the proceedings below "by investigating and monitoring the case and by arguing against the settlement at a hearing." *Id.* at 157. Second, the equities favored the government because it had a good faith argument that it relied on the congressional instruction to the courts in the False Claims Act not to approve settlements without the government's consent. *Id.* Finally, the government had a stake in the outcome because it might be subject to claim preclusion by language in the settlement agreement binding "the parties to this action." *Id.* "In sum, the unique structure of the False Claims Act gives the government an adequate level of participation in the district court proceedings, a good-faith reliance on a statutory right, and a concrete stake in the outcome. Thus, the government's appeal is properly before us even though the government is not a party that ordinarily could challenge as of right the district court's final order." *Id.* at 158.

**\*9** Some district courts have also recognized the existence of a joint prosecutorial or common interest privilege, as to documents protected by the attorney-client privilege and work product doctrine, between the qui tam relators and the government with respect to documents that are shared between them. *United States ex rel. Purcell v. MWI Corp.,* 209 F.R.D. 21, 26-27 (D.D.C.2002) (recognizing joint privilege when the government intervened); *United States ex rel. Burroughs v. DeNardi Corp.,* 167 F.R.D. 680, 686 (S.D.Cal.1996) (recognizing joint privilege when the government did not intervene).

Based on these authorities, I find that the government's real party in interest status, coupled with the elements of control maintained by the United States in this qui tam action, entitle it to receive documents produced in discovery. The peculiar nature of the non-intervening government's role in qui tam actions, especially the rights to intervene with good cause, to prevent dismissal of the action, to dismiss the action despite relators'

objections and to settle or approve any settlement, cannot be prudently exercised without access to all relevant discovery. I find that the United States may have access to the "twofold" redacted and unredacted nonparty patient records, subject to the same protective order as the parties, except that the government may also use the documents produced for purposes of its health care oversight function, as discussed below.

*D. The United States May Use Information Gained Through Discovery for Purposes of Its Health Oversight Function*

The final question that the court must address is whether the United States should be limited to using the nonparty patient records only in the context of this litigation, as defendants argue, again without citation to any authority. The government asserts that the HIPAA Standards specifically permit disclosure of such documents to the Department of Justice pursuant to its function as a "health oversight agency."

In this regard, the Standards permit disclosure of protected health information to a *health oversight agency for oversight activities authorized by law,* including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions; or other activities *necessary for appropriate oversight of:*
(i) *The health care system;*
(ii) *Government benefit programs* for which health information is relevant to beneficiary eligibility;
(iii) Entities subject to government regulatory programs for which health information is necessary for determining compliance with program standards; or
(iv) *Entities subject to civil rights laws* for which health information is necessary for determining compliance.

**45 C.F.R. § 164.512(d)(1)** (emphasis added). The final rule implementing the Standards specifically names the Department of Justice as a health oversight agency with respect to its conduct of oversight activities relating to the health care system and its civil rights enforcement activities. 65 Fed.Reg. 82462, 82492 (Dec. 28, 2000).

**\*10** These regulations are clear and unambiguous, and they wholly undermine defendants' arguments

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31819130 (E.D.La.))

to the contrary. Accordingly, I find that the United States may use any information it obtains through discovery in this action in connection with its legitimate governmental health oversight activities, and not solely for purposes of this litigation. I further find that paragraphs (13) and (14) of the government's proposed protective order (Record Doc. No. 104, Government Exh. A to its memorandum in response to defendants' motions), should be included in the protective order to be entered herein.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that defendants' motions for protective orders are GRANTED IN PART AND DENIED IN PART. The motions are granted to the extent that they request that a protective order as outlined above be entered. The motions are denied in all other respects.

IT IS FURTHER ORDERED that the parties must submit to the court within ten (10) days of entry of this order a motion for a "qualified protective order" that incorporates (1) the provisions of **45 C.F.R. § 164.512(e)(v)**, (2) the "twofold" production procedure proposed by relators, but with access limited only to counsel of record in this action, no more than two paralegals employed by them and one expert for each party, and (3) the paragraphs currently numbered (13) and (14) in the government's proposed protective order.

In addition, the redrafted protective order must include the language cited on page 14 of this opinion concerning the execution of and filing with the court an affidavit by all those with access to the documents, in a form of affidavit to be annexed as an exhibit to the protective order.

The protective order must also provide that, although the burden is on the party who challenges the validity or necessity of any redactions to bring that challenge to the court through a motion, the burden is on the party who resists discovery, *i.e.,* the party making the redactions, to demonstrate that the redaction is proper.

Finally, the protective order shall provide that all parties must seek leave of court before filing any pleading or document under seal. This court's record is presumptively a public record, and the Clerk of Court has limited storage space for

maintaining documents under seal. Only truly confidential, proprietary, trade secret or other similar materials should be sealed in a public record. Thus, the court will not permit the wholesale filing under seal of pleadings, motion papers, depositions and exhibits that contain only limited amounts of truly confidential information. Counsel are instructed to try to "write around" confidential information in their memoranda and to request sealing only of those parts of memoranda and exhibits that are truly confidential.

2002 WL 31819130 (E.D.La.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1 of 1 DOCUMENT

## CONNECTICUT FAIR HOUSING CENTER, INC., Plaintiff, v. I.S.D.S. HARTFORD PROPERTIES CORP. AND J.R. GILLETT REALTY CORP., Defendants.

### CIVIL ACTION NO. 3:00-cv-1867 (JCH)

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*2001 U.S. Dist. LEXIS 24008*

**September 12, 2001, Decided**

**DISPOSITION:** [*1] Plaintiff's motion to compel granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a suit filed under the Fair Housing Acts, *42 U.S.C.S. § 3601* et seq., and Conn. Gen. Stat. § 46a-64c, plaintiff center brought a motion seeking an order compelling defendant corporations to provide answers and documents to interrogatory and document requests.

**OVERVIEW:** The corporations objected to the interrogatory and document requests on the grounds that the information sought was overly intrusive and implicated privacy rights of non-parties, and that the requests were burdensome and would not produce reliable or relevant evidence. The center brought suit, alleging that the corporations subjected African-American applicants to unequal treatment on the basis of their race and engaged in a pattern and practice of denying and discouraging rentals by families with children. The court found that the discovery requested by the center was relevant to establishing a pattern and practice claim of discrimination. In order for the center to establish a pattern and practice claim, that black tenants and applicants and tenants and applicants with children were treated differently, the center had to find out how other applicants and tenants were treated. Therefore, the interrogatories and document requests made by the center were reasonably calculated to lead to the discovery of admissible evidence, and although the discovery implicated the privacy interests of non-parties,

in an action for violations of federal law, the need was for full disclosure.

**OUTCOME:** The center's motion to compel was granted.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN1] Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Discovery rules are to be accorded broad and liberal treatment.

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN2] Doubts about relevance at the discovery stage should be made in favor of production, as any irrelevant materials produced can later be ruled inadmissible at trial.

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN3] In cases involving disclosure of personal information of non-parties, the court must engage in a balancing between the privacy interest at stake and the need for disclosure.

*Civil Procedure > Disclosure & Discovery > Relevance*
[HN4] Full disclosure is most strongly warranted in cases involving alleged violations of federal rights.

**COUNSEL:** For CONNECTICUT FAIR HOUSING CENTER INC, plaintiff: Jon Bauer, University Of

Connecticut, Elizabeth Mary McCormick, University of Connecticut, Hartford, CT.

For ISDS HARTFORD PROPERTIES CORP, JR GILLETT REALTY CORP, defendants: Leon M. Kaatz, Kaatz & Peikes, Hartford, CT.

For ISDS HARTFORD PROPERTIES CORP, JR GILLETT REALTY CORP, defendants: Scott M. Karsten, Nicole D. Dorman, Sack, Spector & Karsten, West Hartford, CT.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINIONBY:** Janet C. Hall

**OPINION:**

### RULING ON PLAINTIFF'S MOTION TO COMPEL [DKT. NO. 20]

The plaintiff, Connecticut Fair Housing Center, Inc. ("Center"), brings this motion seeking an order compelling the defendants, I.S.D.S. Hartford Properties Corp. and J.R. Gillett Realty Corp. ("Corporations"), to provide answers and documents to interrogatory nos. 8 and 9 and to document request nos. 2, 7 and 17 of Plaintiff's Interrogatories and Requests for Production of Documents, dated February 1, 2001. In addition, the plaintiff asks the court to compel the defendants to provide answers and produce documents to the [*2] interrogatories and requests for production to which the defendants have not objected.

The defendants object to the interrogatory nos. 8 and 9 and document request nos. 2, 7 and 17 on the grounds that the information sought is overly intrusive and implicates privacy rights of non-parties and that the requests are burdensome and will not produce reliable or relevant evidence.

For the reasons stated below, the court GRANTS the plaintiff's motion to compel.

### I. FACTS

The Center brought this lawsuit pursuant to federal and state Fair Housing Acts, *42 U.S.C. § § 3601* et seq and Conn. Gen. Stat. § 46a-64c, against the Corporations which own and manage the Parkview Towers in Hartford and other Connecticut rental properties. The suit alleges that the Corporations have subjected African-American applicants to unequal treatment on the basis of their race and have engaged in a pattern and practice of denying and discouraging rentals by families with children.

After the Center served its first set of interrogatories on the Corporations on February 1, 2001, the Corporations responded with a number of objections. The parties were able to resolve many of the [*3] disputes themselves but were unable to reach agreement on the requests that are the subject of this ruling. The interrogatories in question seek information on the racial composition of the tenants since the properties in question were acquired n1, the number of families with children since that time and the names, addresses and telephone numbers of all black tenants and tenants with children who currently reside and who used to reside at the properties. In addition, the interrogatories request information on any apartment vacancies in the buildings, the dates of those vacancies, the race and contact information of the vacating tenants, and the race and contact information for the subsequent tenants. The production requests include all documents which identify the name, address, race and familial status of any tenants at the properties, any documents concerning prospective tenants, any documents identifying the contact information and race and familial status of applicants and all waiting lists for apartments. Finally, the plaintiffs seek all documents which refer to the race or familial status of tenants, applicants or people inquiring about the apartments since the acquisition of [*4] the properties.

n1 The properties at issue were acquired by the Corporations in 1995 and 1998.

### II. DISCUSSION

[HN1] Under Fed. R. Civ. Pro. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Discovery rules are to be accorded broad and liberal treatment. *Gray v. Bd. of Educ., City of New York, 692 F.2d 901, 904 (2d Cir. 1982).*

1. Relevance

The court finds that the discovery requested by the Center is relevant to establishing a pattern and practice claim of discrimination. The court notes that [HN2] doubts about relevance at the discovery stage should be made in favor of production, as any irrelevant materials produced can later be ruled inadmissible at trial. See e.g., *Flynn v. Goldman, Sachs & Co., 1991 U.S. Dist. LEXIS 15785, 1991 WL 238186 at *2 (S.D.N.Y. 1991).* In this case, in order for the Center to establish a pattern and practice claim and that black tenants and applicants and tenants and applicants [*5] with children were treated differently, the Center must be able to find out how other applicants and tenants were treated. See e.g., *169 F.R.D.*

550, 554 (S.D.N.Y. 1996) (holding that records of other surgeons were discoverable in a discrimination case brought by a doctor who was denied hospital privileges in order for the plaintiff to be able to demonstrate that he was treated differently). The court finds that the interrogatories and document requests made by the Center are reasonably calculated to lead to the discovery of admissible evidence.

### 2. Burden

The Corporations object to having to identify which present and former tenants and applicants are black or have children because the information, presumably collected from staff members, will be based on unreliable recollections and will likely result in error. The court finds that these requests are not overly burdensome. According to the Center, the applications for apartments at the Corporations' buildings ask for name and birth date and relationship to the tenant of all occupants of the apartment. Therefore, familial status should not be difficult to ascertain from the Corporations' own records. In addition, [*6] according to one employee, the Corporations require a copy of a photo identification from applicants, see Dep. of Eleni Sfikas at 53, so to the extent that those photocopies exist in the Corporations' files, they should be helpful in easily fulfilling the Center's request. Finally, for those applicants and tenants without photo I.D.'s on file, the Corporations should answer the interrogatories to the best of their recollection. The Corporation is free to attack the veracity of this information at trial. The Corporations have not made any additional particularized showing that the requests are unduly burdensome. Therefore, the court finds that the document and interrogatory requests made by the Center are relevant and not unduly burdensome.

### 3. Privacy Interests

The court recognizes that [HN3] in cases involving disclosure of personal information of non-parties, such as in this case, the court must engage in a balancing between the privacy interest at stake and the need for disclosure. See e.g., Burka v. New York City Transit Authority, 110 F.R.D. 660, 664 (S.D.N.Y. 1986). The privacy interest at stake here is the right of the non-party tenants not to have their personal [*7] information disclosed. While this is a recognized privacy interest, the expectation is lessened by the fact that much of the information, like telephone number and address, is often listed publicly. In addition, race and familial status can often be observed. The court recognizes, however, that tenants have a strong privacy interest in keeping credit and financial information contained in their tenant files confidential. This interest is stronger on the part of non-parties who have no stake in the litigation at hand.

Against this privacy interest, the court weighs the interest of the Center in having this disclosure. The need for full disclosure of facts is necessary to our system of justice. See e.g., Burka, 110 F.R.D. at 665. The court notes that [HN4] full disclosure is most strongly warranted in cases, like this one, involving alleged violations of federal rights. Id. Clearly, in this case, in order to bring a claim of pattern and practice discrimination, the Center must obtain information regarding the background of applicants, including those to whom the Corporations have elected to rent and to whom they have not. The Center's claim turns on their ability to establish [*8]  that the Corporations discriminated against the plaintiff applicants and that they were motivated by discriminatory animus that has manifested itself previously and that the Corporations' reasons for not renting the units or steering applicants to certain buildings are merely pretext. See e.g., Marable v. H. Walker & Associates, 644 F.2d 390, 396 (5th Cir. 1981)(holding that the district court erred in not considering comparative evidence of other tenants' credit and financial information in a case brought under the Fair Housing Act because such evidence went to demonstrating pretext).

The court finds that the Center's interest in disclosure generally outweigh the privacy interests implicated. However, to the extent that there are remaining concerns about the financial information being disclosed, the court finds that the interests may be adequately protected by a confidentiality agreement and protective order agreed to by the parties. Accordingly, if the Corporations promptly request, the Center will enter into a confidentiality agreement before production proceeds. n2

n2 Corporations can begin gathering the responsive documents immediately.

[*9]

### 4. Unproduced documents

At the time of the filing of the Center's response to this motion (Dkt. No. 24) dated June 28, 2001, the Corporations had failed to produce responses to interrogatories and document requests for which they offered no objection. To the extent that any of those requests have not yet been fulfilled, the court orders the Corporations to respond to all discovery requests outstanding by October 1, 2001.

### III. CONCLUSION

The court grants plaintiff's motion to compel (Dkt. No. 20) and orders the defendants to answer all

2001 U.S. Dist. LEXIS 24008, *

interrogatories and document requests that were the subject of this ruling. In addition, the court orders the defendants to respond to all discovery requests to which there has been no objection.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 12th day of September 2001.

Janet C. Hall

United States District Judge

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed this 9th day of June,

2004, to the following counsel of record:

Terrence M. O'Neill, Esq.
Ann E. Lynch, Esq.
Steven R. Strom, Esq.
Assistant Attorneys General
Office of the Attorney General
110 Sherman Street
Hartford, CT   06105
**Attys. for Defendants.**

Nancy B. Alisberg-ct21321
Office of Protection & Advocacy
60-B Weston Street
Hartford, CT   06120
Tel. No.:  860.297.4300
Fax. No.:  860.566.8714
E-Mail:  nancy.alisberg@po.state.ct.us
**Attorney for Plaintiffs.**

David C. Fathi-ct22477
ACLU National Prison Project
733 15th Street, NW, Suite 620
Washington, D.C.   20005
Tel. No.:  202.393.4930
Fax. No.:  202.393.4931
E-Mail:  dfathi@npp-aclu.org
**Attorney for Plaintiffs.**

Annette Lamoreaux-ct25769
Connecticut Civil Liberties Union
Foundation
32 Grand Street
Hartford, CT   06106
Tel. No.:  860.247.9823-Ext. 211
Fax. No.:  860.728.0287
E-Mail:  annettel@cclu.org
**Attorney for Plaintiffs.**

Ben A. Solnit-ct00292

17