UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT OFFICE OF<br>  PROTECTION AND ADVOCACY<br>  FOR PERSONS WITH DISABILITIES;<br>JAMES MCGAUGHEY, Executive<br>  Director, Office of Protection and<br>  Advocacy for Persons with Disabilities, | : <br> : <br> : <br> : <br> : <br> : | Civil Action No. 3:03CV1352 (RNC) |
|             Plaintiffs, | : <br> : | |
| v. | : <br> : | |
| WAYNE CHOINSKI, Warden,<br>  Northern Correctional Institution,<br>  in his official capacity;<br>GIOVANNY GOMEZ, Warden,<br>  Garner Correctional Institution,<br>  in his official capacity; and<br>THERESA C. LANTZ, Commissioner,<br>  Connecticut Department of Correction,<br>  in her official capacity; | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
|             Defendants. | : | July 27, 2004 |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT
### OF THEIR MOTION FOR AN ORDER ALLOWING
### ACCESS TO PRISONER HEALTH RECORDS

I. **INTRODUCTION**

Defendants raise many objections to plaintiffs' motion for an order, expressly authorized by HIPAA, allowing limited access to prisoner health records so that

plaintiffs' consultants can monitor defendants' compliance with the settlement agreement.[1] None of these objections withstands scrutiny.

## II. ARGUMENT

### A. Plaintiffs' Motion Is Not Made Under PAIMI

Defendants make much of the facts that plaintiffs' right to access medical records under PAIMI is limited (D. Br. at 2-6) and that plaintiffs obtained releases from individual prisoners when launching the investigation that ultimately led to this litigation (D. Br. at 9-11, 13-14). These facts, while not contested, are irrelevant to this motion.

In bringing this civil rights suit, and in seeking to implement that suit's settlement, plaintiffs are not proceeding under their investigatory PAIMI authority. Rather, as litigants, they are invoking this Court's indisputable authority under 42 U.S.C. §1983 and under HIPAA to order disclosure of information to protect the federal rights at issue. See, Plaintiffs' June 9, 2004 Brief ("P. Br.") at 5-7, 11-14. See also, Ginest v. Board of County Com'rs, 306 F. Supp. 2d 1158, 1159 (D. Wyo. 2004) ("Courts are virtually unanimous in holding that class counsel in institutional litigation of this nature has a right to examine client medical records to determine whether a systematic failure exists in the institution's health care system;" defendants' demand for individual inmate releases rejected).

### B. The Lack Of Class Certification Is Similarly Irrelevant

Defendants next argue that the non-class action status of this case defeats plaintiffs' motion (D. Br. at 7-9). This fact is also undisputed, but also irrelevant.

The rule that the public interest in vindicating civil rights may outweigh individual privacy rights is not limited to class actions. See, e.g., Inmates of Unit 14 v.

---

[1] Because defendants' consultants are employees of DOC or its affiliates, defendants' objections, if upheld, would affect only plaintiffs' consultants.

Rebideau, 102 F.R.D. 122, 127-29 (E.D.N.Y. 1984) (in non-class action, prisoners given access to prison staff personnel files, including medical information).

Further, as noted in plaintiffs' initial brief, OPA's federal statutory authority to represent persons with a disability puts it on at least equal footing with private class counsel. See P. Br. at 13 n. 5. PAIMI represents a Congressional determination that conclusively allays defendants' concern over adequacy of representation. Plaintiffs are thus in the same position as class counsel in Doe v. Meachum, 126 F.R.D. 444, 450 (D. Conn. 1989): "professionals whose purpose it is to protect the constitutional rights of the plaintiff class." As in Doe, therefore, this Court should find "that it is more important to the interests of justice that the communications be disclosed, under the strict parameters set forth in the protective order, than that the relationship between patient and psychologist/psychiatrist be protected." Id.

    C.    Review Of Prisoner Health Records Without Prior Notice Or Consent Is Routine And Is Not Harmful

Defendants have submitted affidavits from two of their supervising psychologists that contend granting this motion would be anti-therapeutic. See D. Br. at 11-13 and Exs. J, K. Defendants further contend that the proposed order is "unprecedented." D. Br. at 13. These contentions are unfounded.

As explained in the attached Declaration of Dr. Terry A. Kupers ("Kupers Decl.") (**Ex. A**), review of prisoner medical records by agencies and consultants without obtaining prior consent from prisoners is routine and does not create the harm feared by defendants.

Dr. Kupers is a board-certified psychiatrist who has been reviewing mental health care in jails and prisons for over 25 years. Kupers Decl. ¶¶ 1, 9. In his experience, both agencies and consultants routinely conduct reviews of prisoner medical records without

receiving prior consent from prisoners and without producing any ill effects on the prisoners.

For example, both the National Commission on Correctional Health Care ("NCCHC") and the Joint Commission on the Accreditation of Healthcare Organizations include the review of medical records in their standard review procedure without giving notice to or obtaining consent from the individuals whose records are reviewed. Id., ¶ 7. A copy of a description of the NCCHC accreditation procedure which notes prisoner medical records review is attached to Dr. Kupers' Declaration.

York Correctional Institution in Niantic, Connecticut, is NCCHC accredited. Thus, defendants have allowed and continue to allow review of prisoner medical records without prior notice or consent for monitoring of specific issues by a team of professionals. Plaintiffs seek no more than this here.

Indeed, defendants agreed in the consent judgment entered in West v. Manson, Civil No. H83-366 (AHN), to allow an Agreement Monitoring Panel comprised of three outside mental health experts to "have access to all policies, records, procedures and files at [Connecticut Correctional Institution at Niantic] relevant to mental health treatment" subject only to "due notice" to defendants. See attached excerpt of the West Consent Judgment at Sec. IX. 5 (**Ex. B**). Plaintiffs' motion requests no more than this.

Further, Dr. Kupers routinely reviews prisoner medical records upon signing a confidentiality statement and without receiving prior consent from individual prisoners. Kupers Decl. ¶ 8. In the more than 25 years that Dr. Kupers has performed such reviews, he has never found them to cause any anti-therapeutic effect on the prisoners whose records he reviewed. Id., ¶ 9. Rather, most prisoners welcome review by outside professionals or agencies of the quality of their healthcare. Id.

At the same time, requiring individual prisoner consent to the review process at issue here runs the risk that the sickest prisoners will opt out. Id. ¶ 10. This danger

4

outweighs any risk of resentment of allowing consultants to review the records without prior consent. Id.

In sum, the concerns raised by Dr. Chaplin and Dr. Liu have been refuted by experience, including defendants' own prior and current practices. Those practices, in turn, provide ample precedent for plaintiffs' request.

### D. Plaintiffs' Motion And Proposed Order Comport With Controlling Federal Law

Defendants claim that the proposed order ignores the constitutional and statutory rights of privacy that assure the confidentiality of medical records. D. Br. at 13. On the contrary, the proposed order is expressly authorized by controlling federal law.

#### 1. The Constitutional Right To Privacy Is Not Absolute

Defendants contend (D. Br. at 15-16), and plaintiffs acknowledge, that there is a constitutional right to privacy in medical records. However, that right is not absolute. Instead, it may be outweighed, as here, by a countervailing need for disclosure. See P. Br. at 12-14. See also, Ginest v. Board of County Com'rs, 306 F. Supp. 2d 1158 (D. Wyo. 2004).

#### 2. Jaffee v. Redmond Does Not Change The Result

Defendants also contend that Jaffee v. Redmond, 518 U.S. 1 (1996) creates an absolute privilege between psychotherapist and patient which defeats plaintiffs' motion. D. Br. at 16-21. While Jaffee does acknowledge the existence of a psychotherapist-patient privilege and while it held that this privilege cannot be overcome by a relevance claim, it will not carry the weight assigned to it by defendants.

Although Jaffee rejected balancing the privilege against relevance, it did not create an absolute privilege. Rather, in a passage immediately following those cited by defendants, the Jaffee Court held:

5

> Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would 'govern all conceivable future questions in this area.'

518 U.S. at 18, quoting Upjohn v. United States, 449 U.S. 383, 386 (1981). In the footnote to this passage, the Court then stated:

> Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, <u>we do not doubt that there are situations in which the privilege must give way</u>, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.

518 U.S. at 18 n. 19 (emphasis added).

A court ordered disclosure of individually identifiable health information pursuant to 45 C.F.R. §164.512(e)(l)(i) is precisely one such situation where the privilege "must give way." Jaffee itself predates the 2003 effective date of the applicable HIPAA regulations. See P. Br. at 14 n. 6. "Individually identifiable health information" includes information that relates to "the physical or mental health or condition of an individual [or] the provision of health care to an individual" 42 U.S.C. § 1320(d)(6) (emphasis added). Defendants have cited no case, and plaintiffs are not aware of any, in which the federal psychotherapist privilege recognized by Jaffee was held to overrule the Congressionally mandated disclosure provisions of HIPAA.

This is unsurprising. Courts which have considered the interplay of HIPAA with privileges created by other laws have uniformly held that disclosure of health information is controlled by HIPAA. See P. Br. at 9-11. That the privilege recognized in Jaffee was created under federal common law does not change the result.

Defendants' suggestion (D. Br. at 19) that Jaffee overruled the entire line of cases which allow disclosure of otherwise confidential records when necessary to pursue civil

rights claims is also mistaken. That doctrine is alive and well post Jaffee, which, notably, involved discovery requests by an opposing party rather than, as here, a request by an agency statutorily charged with pursuing legal remedies to protect individuals with mental illness. As the court stated in Ginest v. Board of County Com'rs, 306 F. Supp. 2d at 1158, 1159-60 (D. Wyo. 2004): "Individual and state privacy interests must yield to the federal interest in discovering whether public officials and public institutions are violating federal civil rights." See also, Connecticut Fair Housing Center, Inc. v. I.S.D.S. Hartford Properties Corp., 2001 U.S. Dist. Lexis 24008 at *8 (D. Conn. 2001) ("The Court finds that the Center's interest in disclosure generally outweighs the privacy interests implicated.") (copy attached to P. Br.).

Indeed, "Congress is presumed to legislate with knowledge of judicial precedent. Lorillard v. Pons, 434 U.S. 575, 580-81 ... (1978)." Regents of Univ. of Cal. v. Eli Lilly and Co., 734 F. Supp. 911, 913 (N.D. Cal. 1990) (in absence of "clear legislative statement to the contrary" Congress is presumed to have intended that a statute conflicting with an earlier U.S. Supreme Court decision overturned that decision). Thus, if there is any conflict between Jaffee and HIPAA, HIPAA controls.[2]

    3.    <u>Plaintiffs' Motion and Order Comply With HIPAA</u>

Defendants contend that the disclosure order requested by plaintiffs does not comply with HIPAA because HIPAA does not preempt more stringent state disclosure laws (D. Br. at 21) and because comity requires this Court to enforce Connecticut privacy statutes (D. Br. at 22-27). These contentions are unpersuasive.

HIPAA's anti-preemption provision is irrelevant to this federal question case, because federal law, not state law, provides the rule of decision here. See P. Br. at 10-11, and cases cited therein.

---

[2]    The Jaffee decision was released on June 13, 1996; HIPAA was enacted on August 21, 1996 (See Public Act 104-191).

Nor does comity support defendants' position. In <u>Johnson v. Nyack Hosp.</u>, 169 F.R.D. 550, 557-58 (S.D.N.Y. 1996), in the sentence immediately following the first passage quoted by defendants (D. Br. at 22), the court rejected the notion that "'as a matter of comity federal courts accord deference to state created privileges.'"

> Nevertheless, this Court views the matter differently and does not regard <u>31-33 York</u> as controlling.
>
> To begin with, as noted above, Rule 501 mandates the application of federal privilege law in federal question cases. The federal courts are directed by the Rule, which is a congressional enactment, to decide what federal privilege law is .... [T]he goal of the exercise is the informed determination of a single, uniform federal law of evidentiary privileges.

(footnotes omitted).

In sum, as noted by the Court in <u>Doe v. Meachum</u>, 126 F.R.D. 444, 449 (D. Conn. 1989): "Plaintiffs are correct ... that in a civil rights action brought pursuant to a federal claim, state statutory privileges are not binding."[3]

### 4. Defendants' Request For Prior Notice And Hearing Conflicts With HIPAA And With The Settlement Agreement

Defendants end their brief by asking that "[a]t a minimum" the prisoners should be given notice of this motion and an opportunity to be heard through court appointed counsel. D. Br. at 27-29. This request conflicts with both HIPAA and with the settlement agreement.

---

[3] Defendants go on to argue that the disclosure sought would violate applicable Connecticut privacy statutes. <u>See</u> P. Br. at 22-23. The <u>Doe v. Meachum</u> Court, while it rejected the binding nature of these statutes, nevertheless noted that disclosure, pursuant to a protective order, was "not inconsistent with the applicable Connecticut statutes," 126 F.R.D. at 449. Granting plaintiffs' motion would thus accord with the doctrine of comity, properly applied.

The whole purpose of the HIPAA regulation at issue is to define circumstances under which otherwise confidential health information may be used or disclosed "without the written authorization of the individual ... or the opportunity for the individual to agree or object ...." 45 C.F.R. §512 (emphasis added). Defendants cite no authority for their invitation to erase a whole section of HIPAA by requiring notice and a hearing, and there is none.

Further, defendants agreed in the settlement agreement that the consultants who will monitor compliance "shall have full access to the two facilities and all documents not covered by the attorney-client or work product privileges ..." subject only to this Court's decision on how the consultants would be given access to prisoner health records. See P. Br. at 4. Defendants' suggestion that this Court appoint separate counsel for prisoners and hold ancillary hearings on the access issue goes well beyond what is contemplated by the settlement agreement.

5. The Proposed Order Is Not Too Broad

Defendants also claim that the order sought by plaintiffs is too broad because "[t]he terms of the agreement only govern conditions at NCI's administrative segregation program, NCI's observation cells and the units at Garner where prisoners are housed due to mental illness or impairment." D. Br. at 13 n. 7. This is not so. Section B.2 of the agreement provides that it applies to all prisoners "housed at GCI and NCI" and many of its provisions apply beyond defendants' claimed narrower boundaries. See, e.g., sections B.5a (all prisoners at NCI and GCI who are on psychotropic medication), B.6 (all prisoners at NCI and GCI who request mental health services), B.10 (all prisoners at NCI; all prisoners at GCI who are not in a designated housing unit for the mentally ill), B.14 (all prisoners at NCI and GCI). Compliance with these provisions will need to be monitored. The proposed order is thus not too broad.

9

## CONCLUSION

Plaintiffs are seeking a limited order that would allow professional review of medical information solely to monitor compliance with the settlement agreement reached in this civil rights case, under terms that would safeguard against any further disclosure. Such limited disclosure conforms both to controlling law and to defendants' past and current practice. Accordingly, plaintiffs' motion should be granted.

                              THE PLAINTIFFS,
                              STATE OF CONNECTICUT
                              OFFICE OF PROTECTION & ADVOCACY, et al.

BY: _____
      Ben A. Solnit-ct00292
      Tyler Cooper & Alcorn, LLP
      205 Church Street
      P.O. Box 1936
      New Haven, CT 06509-1910
      Tel. No.: 203.784.8200
      Fax. No.: 203.777.1181
      E-Mail: solnit@tylercooper.com

Nancy B. Alisberg-ct21321
Office of Protection & Advocacy
60-B Weston Street
Hartford, CT 06120
Tel. No.: 860.297.4300
Fax. No.: 860.566.8714
E-Mail: nancy.alisberg@po.state.ct.us

David C. Fathi-ct22477
ACLU National Prison Project
733 15th Street, NW, Suite 620
Washington, D.C. 20005
Tel. No.: 202.393.4930
Fax. No.: 202.393.4931
E-Mail: dfathi@npp-aclu.org

10

Annette Lamoreaux-ct25769
Connecticut Civil Liberties Union
Foundation
32 Grand Street
Hartford, CT   06106
Tel. No.:  860.247.9823-Ext. 211
Fax. No.:  860.728.0287
E-Mail:  annettel@cclu.org
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been mailed this 27th day of July, 2004, to the following counsel of record:

Terrence M. O'Neill, Esq.
Ann E. Lynch, Esq.
Steven R. Strom, Esq.
Assistant Attorneys General
Office of the Attorney General
110 Sherman Street
Hartford, CT  06105
**Attys. for Defendants.**

Nancy B. Alisberg-ct21321
Office of Protection & Advocacy
60-B Weston Street
Hartford, CT  06120
Tel. No.: 860.297.4300
Fax. No.: 860.566.8714
E-Mail: nancy.alisberg@po.state.ct.us
**Attorney for Plaintiffs.**

David C. Fathi-ct22477
ACLU National Prison Project
733 15th Street, NW, Suite 620
Washington, D.C.  20005
Tel. No.: 202.393.4930
Fax. No.: 202.393.4931
E-Mail: dfathi@npp-aclu.org
**Attorney for Plaintiffs.**

Annette Lamoreaux-ct25769
Connecticut Civil Liberties Union Foundation
32 Grand Street
Hartford, CT  06106
Tel. No.: 860.247.9823-Ext. 211
Fax. No.: 860.728.0287
E-Mail: annettel@cclu.org
**Attorney for Plaintiffs.**

Ben A. Solnit-ct00292