UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 JUL 30 A 10:58
U.S. DISTRICT COURT
HARTFORD, CT.

STATE OF CONNECTICUT OFFICE OF : Civil Action No. 3:03CV1352 (RNC)
   PROTECTION AND ADVOCACY :
   FOR PERSONS WITH DISABILITIES; :
JAMES MCGAUGHEY, Executive :
   Director, Office of Protection and :
   Advocacy for Persons with Disabilities, :
   :
       Plaintiffs, :
   :
       v. :
   :
WAYNE CHOINSKI, Warden, :
   Northern Correctional Institution, :
   in his official capacity; :
GIOVANNY GOMEZ, Warden, :
   Garner Correctional Institution, :
   in his official capacity; and :
THERESA C. LANTZ, Commissioner, :
   Connecticut Department of Correction, :
   in her official capacity; :
   :
       Defendants. : July 25, 2004

## DECLARATION OF TERRY A. KUPERS, M.D., M.S.P.

I, Terry A. Kupers, declare:

1. I received a B.A. Degree in Psychology from Stanford University in 1964. I subsequently earned an M.D. from the UCLA School of Medicine in 1968 and a Master's Degree in Social Psychiatry from UCLA in 1974. I completed residency training in Psychiatry at UCLA and became Board Certified in Psychiatry in 1974.

2. I have a private psychiatry practice in Oakland, California. I am an Institute Professor at Wright Institute in Berkeley, California, and a Distinguished Fellow of The American Psychiatric Association. I am the author of four books, including Prison Madness: The Mental Health Crisis Behind Bars And What We Must Do About It (Wiley, 1999).

3. I was employed by the plaintiffs in this matter to conduct a tour of Northern Correctional Institution and Garner Correctional Institution and to write a report about conditions and mental health services in the two institutions for prisoners with mental illness. Once this lawsuit was brought, I continued to advise the plaintiffs on issues regarding conditions of confinement and treatment of prisoners with mental illness at Northern and Garner.

4. I have reviewed the June 29, 2004 affidavit of Martin Paul Chaplin, Ph.D and the June 25, 2004 affidavit of Man Liu, Ph.D in this matter.

5. Both affidavits raise concerns regarding the review of prisoner medical records at Northern and Garner by plaintiffs and their consultants in connection with monitoring compliance with the settlement agreement reached in this matter.

6. In my experience, both agencies and consultants routinely conduct reviews of prisoner medical records without receiving prior consent from the prisoners and without producing any ill effects on the prisoners.

7. For example, such accrediting agents as the National Commission on Correctional Health Care ("NCCHC") and Joint Commission on The Accreditation of Healthcare Organizations ("JCAHO") include the review of medical records in their standard accreditation procedure without giving notice to or obtaining consent from the individuals whose records are reviewed. I attach a copy of a description of the NCCHC accreditation procedure, which notes at pages 255 (second to last line) and 258 (first line) that prisoner medical records will be reviewed during that process.

8. Similarly, I have toured prisons and jails to evaluate mental health services and have reviewed prisoner health records upon signing a statement that I would protect the privacy and confidentiality of those records but without receiving prior consent from individual prisoners. Such a procedure is standard and could easily be put in place here.

9. I have been involved in reviewing mental health care in jails and prisons for over 25 years and these procedures have been successful. I have never found that my review caused any anti-therapeutic effects on the prisoners whose records I reviewed. Indeed, most prisoners welcome review by outside professionals or agencies of the quality of healthcare provided to them. The concerns raised by Dr. Chaplin and Dr. Liu, while theoretically possible, are thus refuted by experience.

10. On the other hand, allowing prisoners to opt out of the review process by requiring their individual consent runs the risk that the records of the sickest prisoners will not be reviewed. This danger outweighs any theoretical anti-therapeutic effect of allowing the consultants to review prison records without prior individual consent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2004.

_____
Terry A. Kupers, M.D., M.S.P.