UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT OFFICE : <br> OF PROTECTION AND ADVOCACY : <br> FOR PERSONS WITH DISABILITIES; : <br> JAMES MCGAUGHEY, Executive : <br> Director, Office of : <br> Protection and Advocacy for : <br> Persons with Disabilities, : <br> : <br>　　Plaintiffs, : <br> : <br>　　v. : <br> : <br> WAYNE CHOINISKI, Warden, : <br> Northern Correctional : <br> Institution, in his official : <br> capacity; GIOVANNY GOMEZ, : <br> Warden, Garner Correctional : <br> Institution, in his official : <br> capacity; and THERESA C. : <br> LANTZ, Commissioner, : <br> Connecticut Department of : <br> Correction, in her official : <br> capacity, : <br> : <br>　　Defendants. : | CASE NO. 3:03CV1352(RNC) |

### RECOMMENDED RULING ON MOTION FOR ATTORNEY'S FEES

The parties resolved the plaintiffs' 42 U.S.C. § 1983 claims and entered into a settlement agreement. The plaintiffs now move for attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).[1] (Doc. #76.) For the reasons set forth below, the court recommends

---

[1]Title 42 U.S.C. § 1988(b) provides, in relevant part, that "the court, in its discretion, may allow the prevailing party" in various federal civil rights actions, "a reasonable attorney's fee as part of the costs."

that the motion be denied.[2]

I. Factual Background

In August 2003, the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities and its executive director, James McGaughey, commenced this action pursuant to 42 U.S.C. § 1983 against the Warden of the Northern Correctional Institution, Wayne Choinski, the Warden of the Garner Correctional Institution, Giovanny Gomez, and Commissioner of the Connecticut Department of Corrections Commissioner, Theresa Lantz, in their official capacities. The plaintiffs alleged that the conditions of confinement of prisoners and detainees with mental illness at Northern Correctional Institution ("Northern") and Garner Correctional Institution ("Garner") caused the prisoners to suffer and exacerbated their mental illness in violation of the Eighth and Fourteenth Amendments. The plaintiffs sought declaratory and injunctive relief on behalf of the prisoners and detainees of the two prisons. They also sought an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988. In September 2003, the case was referred to the undersigned for a settlement conference. (Doc. #6.) Thereafter, the parties engaged in intensive negotiations. The case presented difficult and sophisticated issues in a highly specialized area of law. Counsel brought to the negotiations their energy, dedication and legal acumen. Through their exemplary

---

[2]Chief Judge Robert N. Chatigny referred the motion to the undersigned for a recommended ruling. See doc. #82.

performance, a settlement resulting in an overhaul in the treatment of inmates with mental illness was achieved just a few months after the lawsuit was filed. On March 8, 2004, the parties entered into a settlement agreement settling all claims subject to approval by the district court and entry of a final order and judgment. According to its terms, the settlement agreement would become effective when the court entered an order of dismissal incorporating the agreement. (Settlement Agreement ¶¶A.6, A.7.)[3] The agreement would remain in effect for three years. (Settlement Agreement ¶B.17.)[4]

---

[3]Paragraph A.6 provides:
　　Except where otherwise provided, the Defendants shall be obligated to perform their obligations under this settlement agreement upon the date of the filing of the Court's order of Dismissal of this matter. The date of the filing of the Court's Order of Dismissal shall hereinafter be referred to as the "effective date" of the agreement.

Paragraph A.7 provides:
　　The parties shall request that the Court, in its Order of Dismissal, incorporate the terms of this Agreement, thereby making "the parties' obligation to comply with the term of the Settlement . . . part of the order" consistent with the holding in Kokkonen v. Guardian Life Ins., 511 U.S. 375, 381 (1994). The parties agree that, after the Court issues such an order, it shall have jurisdiction and authority to enforce this Agreement only as set forth in paragraph A.13, and subject to the termination provisions in paragraph B.17. See Id.; Scelsa v. City University of New York, 76 F.3d 37, 40 (2d Cir. 1996).

[4]Paragraph B.17 provides in relevant part:
　　[T]he agreement, and all rights and obligations arising thereunder, shall terminate and shall no longer be enforceable three years from the effective date. Upon termination . . . all jurisdiction of any court, as well as the right of the plaintiff to seek specific performance of this agreement, shall end, and no court shall have the

The comprehensive agreement provided for changes to, <u>inter alia</u>, mental health staffing, the administration of psychoactive medication, confidentiality of mental health service, use of force on the mentally ill and employee training.  In addition to agreeing on substantive changes in the conditions of confinement of mentally ill inmates in the two facilities, the parties resolved the plaintiffs' attorney's fees in achieving resolution of the case and in monitoring and enforcing the agreement.  Paragraph B.18 of the settlement agreement, entitled "Attorneys' Fees and Costs," provides:

> The defendants shall pay to the plaintiffs the sum of $177,850 for attorneys' fees and $13,131.16 for costs incurred in this case to date.  Any future awards of attorney's fees shall be calculated in accordance with the hourly rates established pursuant to the Prison Litigation Reform Act and limited to $20,000 a year as set forth in Paragraph A12 above for attorneys' fees and $5000 a year for plaintiff's monitoring and enforcement expenses.

(Settlement Agreement ¶B.18.)

Plaintiffs' attorney's fees for monitoring and enforcement of the agreement were limited to the three year term of the agreement and to the hourly rates under the Prison Litigation Reform Act. (Settlement Agreement ¶A.12.)

---

power or jurisdiction to enforce this agreement. . . .  In the event any motion or proceedings are pending on the third anniversary of the effective date of this agreement, the court shall be bound to dismiss any such motions or proceedings as the court's jurisdiction shall terminate with the exception of any attorney's fees motions not yet acted upon by the Court.

Pursuant to the agreement, the parties would not submit the settlement agreement to the court until it was approved by the Connecticut General Assembly. (Settlement Agreement ¶B.19.[5]) They further agreed that prior to the effective date of the agreement, the parties' consultants would collaborate to develop an audit instrument for the purpose of evaluating the defendants' compliance with the settlement agreement. (Settlement Agreement at ¶B.17.)

The agreement provided that upon dismissal of the case, the court's "jurisdiction over the matters set forth in this litigation shall be limited, and specifically, the Court shall retain jurisdiction solely to ensure that the defendants have fulfilled the obligations undertaken in this settlement agreement." (Settlement Agreement ¶A.13.) The sole remedy available to the plaintiffs is "an order directing specific performance of the agreement herein in the event that the court found that the defendants failed to substantially comply." (Settlement Agreement ¶A.13.)

---

[5]Section B.19 of the agreement provides:
   Prior to submission of this agreement to the Court for approval, the parties acknowledge that the defendants' authority to enter into this Settlement Agreement is contingent upon the General Assembly's approval of this agreement pursuant to Conn. Gen. Stat. § 3-125a. The defendants have not obtained the General Assembly's approval at the time they and their attorneys signed this agreement and will not have the General Assembly's approval until such time as the General Assembly has approved this agreement by resolution, or the thirty day period for the General Assembly to consider this agreement has elapsed, as described in Conn. Gen. Stat. § 3-125a.

The Connecticut state legislature approved the settlement agreement in April 2004. In June 2004, the plaintiffs filed a motion for an order permitting them access to prisoner health records. (Doc. #37.) On September 21, 2005, the parties amended ¶A.13 of the settlement agreement to add a provision whereby the court would retain jurisdiction to rule on the issue of disclosure of the inmates' health records to the consultants.[6]

On September 22, 2005, the parties filed a "joint motion for conditional dismissal and approval of settlement." (Doc. #74.) On September 26, 2005, the court granted the motion and dismissed the case. The order stated:

> Having considered the Joint Motion for Conditional Dismissal and Approval of Settlement and the parties' Settlement Agreement attached hereto as Exhibit A, it is ordered that such Motion be and is hereby GRANTED;
> IT IS FURTHER ORDERED that all terms and conditions of the parties' settlement agreement are hereby INCORPORATED INTO THIS ORDER as if fully set forth herein and are hereby approved and the defendants are DIRECTED to fulfill the obligations undertaken in the Settlement Agreement;
> IT IS FURTHER ORDERED that, subject to the terms and conditions of this order, the above entitled action is hereby DISMISSED WITH PREJUDICE; and
> IT IS FURTHER ORDERED that this court shall RETAIN JURISDICTION for the purpose of enforcing any of the terms and conditions of the parties' Settlement Agreement. This jurisdiction shall be limited as set forth in Sections A.13 and B.17 of the Settlement Agreement.

(Doc. #75.)

---

[6]The dismissal of the case on September 26, 2005 terminated the plaintiffs' pending motion regarding disclosure of the inmates' health records. (Doc. #37.) On May 17, 2006, the plaintiffs filed a renewed motion. (Doc. #86.)

Once the case was dismissed, the defendants were obligated to pay, and did pay, the plaintiffs attorney's fees and costs of $190,981.16 as set forth in ¶B.18. On October 11, 2005, the plaintiffs filed the instant motion.[7]

II. Discussion

The plaintiffs seek an award of attorney's fees of $181,684.80 and $2803.39 in costs pursuant to 42 U.S.C. § 1988(b).[8] These are fees the plaintiffs incurred from March 9, 2004 through September 25, 2005, the period of time after the parties signed the settlement agreement and before the agreement became effective.[9] The plaintiffs claim that although the settlement agreement provides for attorney's fees, they did not waive their statutory entitlement to attorney's fees for this particular period of time. The defendants disagree and contend that the settlement agreement completely resolved the issue of attorney's fees and the plaintiffs

---

[7] As noted, the undersigned was involved in the parties' settlement negotiations. During oral argument, the parties stated on the record that they had no objection to the undersigned ruling on the instant motion. (Tr. 8/15/06 at 28-29.)

[8] The plaintiffs also seek the fees and costs incurred in preparing the instant motion.

[9] After the parties signed the settlement agreement and before the settlement agreement became effective, plaintiffs' counsel expended 600 hours. A good part of this time was spent on their efforts to obtain a court order that the health records of the inmates in Northern and Garner be disclosed to the consultants without consent of the inmates in order to evaluate the defendants' compliance with the agreement and on assisting their consultants in the drafting of the audit instruments. (Doc. #83 at 8-9.)

7

are not entitled to fees beyond the terms of the agreement.[10]

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law. . . ." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004). In ascertaining the contractual rights and obligations of the parties, the court must seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction. Alstom Power, Inc v. Balcke-Durr, Inc., 269 Conn. 610 (2004). "[T]he rules of construction . . . dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses." Dugan v. Grzybowski, 165 Conn. 173, 179 (1973). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004).[11]

> A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.

---

[10]Because the court concludes that this argument is dispositive, it need not reach the defendants' other arguments concerning prevailing party status and jurisdiction.

[11]Both parties claim that the language of the agreement is unambiguous and supports their respective positions.

8

> . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Any ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language is suspectible to more than one reasonable interpretation, the contract is ambiguous.

United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 670-71 (2002). It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence. United States v. Liranzo, 944 F.2d 73, 77 (2d Cir. 1991).

As previously noted, the parties included an explicit agreement as to the plaintiffs' attorney's fees. Paragraph B.18 of the settlement agreement provides that

> [t]he defendants shall pay to the plaintiffs the sum of $177,850 for attorneys' fees and $13,131.16 for costs incurred in this case to date. Any future awards of attorney's fees shall be calculated in accordance with the hourly rates established pursuant to the Prison Litigation Reform Act and limited to $20,000 a year as set forth in Paragraph A12 above for attorneys' fees and $5000 a year for plaintiffs' monitoring and enforcement expenses.

Paragraph A.12 provides:

> Plaintiffs' entitlement to attorney's fees for monitoring and enforcement of this agreement shall be limited to the three year effective term of this agreement and shall be limited to the hourly rates permitted under the Prison Litigation Reform Act. In no event shall plaintiffs' entitlement to attorney's fees for monitoring and enforcement exceed $20,000 in any calendar year for attorneys' fees and $5000 a year for plaintiffs'

9

monitoring and enforcement expenses.

The plaintiffs concede that they reached an agreement with the defendants as to attorney's fees and costs for the period from the commencement of the lawsuit to the signing of the settlement agreement. They also concede that they reached an agreement with the defendants as to attorney's fees and costs incurred after the effective date of the settlement agreement. They claim that these agreements "in no way affect [their] entitlement to fees for services performed between those dates." (Doc. #76b at 14.) The plaintiffs argue that "the fact that the Settlement Agreement compromises some of their fee claims makes clear that others are unaffected" and cite as support Valley Disposal v. Central Vermont Solid Waste, 71 F.3d 1053 (2d Cir. 1995).

In Valley Disposal, the parties in a § 1983 case entered into a settlement agreement. In pertinent part, the parties stipulated to a

> dismissal with prejudice of the District as a party-defendant from the [present lawsuit], meaning also to dismiss with prejudice any claims made by the District therein pursuant to Fed. R. Civ. P. 11 and 29 U.S.C. § 1927.

71 F.3d at 1058. The plaintiffs, with the consent of the defendant, moved to dismiss. The court dismissed the action with prejudice pursuant to Rule 41(a)(2). Id. at 1055. The plaintiffs then moved for attorney's fees pursuant to 42 U.S.C. § 1988. The district court granted the motion. On appeal, the defendants argued, inter alia, that the plaintiffs waived their right to seek

10

fees. Id. at 1057. The Second Circuit acknowledged "that a party may express its intent to waive attorney's fees by employing broad release language, regardless of whether that release explicitly mentions attorney's fees." Id. at 1058. In examining the parties' stipulation, however, the Second Circuit found that it

> did not purport to execute a general release of claims between the parties, nor did it state in broad terms that the settlement would be without costs to either party. To the contrary, the parties specified which costs were waived by virtue of the settlement: those sought by the District pursuant to Rule 11 and § 1927. Given that the parties specified with particularity that some costs were covered by their agreement, we find it difficult to conclude that the settlement manifested an unspoken intent to waive any costs not mentioned in this instance, plaintiffs' attorneys' fees pursuant to § 1988. . . .
>
> The most natural interpretation of the parties' agreement, which led to the dismissal, was that it was intended only to resolve the plaintiffs' substantive claims against the District - and not any collateral matters, such as § 1988 petitions.

Valley Disposal, 71 F.3d at 1058-59. The plaintiffs in this case contend that the settlement agreement's silence as to what they refer to as the "second" or "middle" phase of the case cannot be construed as a waiver of attorney's fees.

The defendants argue, and the court agrees, that the facts in this case compel a conclusion different from that reached in Valley Disposal. This is not a case where the settlement agreement is silent as to an award of attorney's fees. In this case, the agreement not only contains an explicit provision that the defendants will pay the plaintiffs' attorneys' fees and costs but sets forth specifically and carefully negotiated terms regarding

11

their payment. Paragraphs ¶¶B.18 and A.12 of the settlement agreement unambiguously reflect that the parties reached a complete agreement as to attorney's fees. That the parties did not address what the plaintiffs refer to as the "middle" phase of the case does not mean that they are entitled to fees. Rather, from this court's review of the agreement, the parties did not intend to award the plaintiffs fees for the hiatus before the parties submitted the agreement to the court for dismissal. The plain language reflects an agreement that the plaintiffs would be paid for their efforts to resolve the case and paid for their efforts to monitor and enforce the agreement. The intent of the parties was to limit any and all claims for attorney's fees and costs to those expressly stated in the agreement. The plaintiffs' attempt to read into the agreement an additional period of compensable time is not supported by the contract language.

The court's conclusion that the parties intended to effect a global settlement that encompassed all attorney's fees due the plaintiffs is bolstered by a review of the settlement agreement as a whole. The parties' purpose in entering the settlement agreement is set forth in ¶A.1 wherein the parties represented that the settlement agreement is a resolution as to "all of the claims" in the case:

> This settlement agreement is entered into by the parties to resolve all of the claims made in this action, wherein the plaintiffs, Office of Protection and Advocacy for Persons with Disabilities ("OPA") and James McGaughey, bring a number of claims relating to the conditions of

12

confinement of inmates housed at Northern Correctional
Institution and Garner Correctional Institution.

(Settlement Agreement ¶A.1.) In addition, the parties agreed that the court would retain jurisdiction "solely to ensure that the defendants have fulfilled the obligations undertaken in this settlement agreement." (Agreement ¶A.13.)[12] They further agreed that the sole remedy available to the plaintiffs was an order directing specific performance. Paragraph A.13 is further evidence that the parties intended that the only claim remaining for adjudication concerned the defendants' compliance with the

---

[12]The parties' agreement as to the court's jurisdiction after the court approved the settlement agreement is set forth in ¶A.13, which provides:
> After the Court adopts this settlement agreement, the Court's jurisdiction over the matters set forth in this litigation shall be limited, and specifically, the Court shall retain jurisdiction solely to ensure that the defendants have fulfilled the obligations undertaken in this settlement agreement. If the plaintiffs have reasonable cause to believe that the defendants have failed to substantially perform any obligation undertaken in this settlement agreement, they may follow the procedures for seeking enforcement as set forth in paragraphs A.8 - A.11 herein. At any hearing regarding the issue of the defendants' compliance with the terms of this agreement, plaintiffs shall have the burden of proving that the defendants have a pattern of failing to substantially comply with one or more of the terms of this agreement. If, after hearing, the Court finds that the defendants have failed to substantially comply, the sole remedy shall be an order directing specific performance of the agreement herein. The Court shall apply Connecticut state contract in deciding any motion seeking specific performance. For purposes of this agreement, "substantially comply" and "substantial performance" mean that the defendants are in compliance with the terms of this agreement in all material respects.

13

obligations set forth in the settlement agreement. Additional support that the parties evinced an intent to effectuate a comprehensive and final resolution as to attorney's fees is found in ¶B.17, which addressed "Enforcement and Compliance Assessment."[13] In ¶B.17, the parties agreed, <u>inter alia</u>, that neither they nor the court could alter or expand the terms of the settlement agreement which had been bargained for by each side. A payment of attorney's fees not encompassed in the agreement would violate ¶B.17 because it would "add to" the agreement and require the court "expand or alter" the terms of the agreement.[14] The explicit agreement of the

---

[13]Paragraph B.17 provides in relevant part:
    [T]he agreement, and all rights and obligations arising thereunder, shall terminate and shall no longer be enforceable three years from the effective date. Upon termination . . . all jurisdiction of any court, as well as the right of the plaintiff to seek specific performance of this agreement, shall end, and no court shall have the power or jurisdiction to enforce this agreement. . . . In the event any motion or proceedings are pending on the third anniversary of the effective date of this agreement, the court shall be bound to dismiss any such motions or proceedings as the court's jurisdiction shall terminate with the exception of any attorney's fees motions not yet acted upon by the Court.
    The parties agree not unilaterally seek to modify, extend, add to, terminate, or otherwise challenge this agreement, under the Prison Legal Reform Act or otherwise, for the duration of the three year enforcement period. The parties further agree that this agreement may be modified or terminated at any time by mutual, written agreement.
* * *
    The Court shall not, sua sponte or otherwise, expand or alter the provisions of this agreement.

[14]The plaintiffs argue that the statement in ¶B.17 that "the court's jurisdiction shall terminate with the exception of any attorney's fees motions not yet acted upon by the Court" rebuts the defendants' claim that the court does not have jurisdiction to hear

14

parties as to attorney's fees, coupled with the provisions regarding the agreement's purpose, the court's limited jurisdiction and prohibitions against adding to, expanding or altering the agreement, evince the parties' intent to resolve completely the issues in the case, including attorney's fees. The plaintiffs' interpretation of the agreement would render these provisions meaningless.

During oral argument, the plaintiffs emphasized that the stipulation of dismissal did not state that the dismissal was "without costs."[15] They claim that the fact that the stipulation of dismissal did not say "without costs" is dispositive pursuant to Valley Disposal.[16] (Tr. 8/15/06 at 37, 39, 46.) The court does not agree. In discerning the parties' intent regarding attorney's

---

the plaintiffs' motion. (Doc. #83 at 1; tr. 8/15/06 at 33, 58.) The plaintiffs do not argue that it is evidence that they are entitled to additional fees. Nor could the phrase be so construed. The phrase concerns the court's jurisdiction. The parties agreed to limit the court's jurisdiction to ensuring that the defendants fulfill the obligations set forth in the settlement agreement, see ¶A.13, one of which is to pay the fees identified in ¶B.18. The phrase in ¶B.17 refers to the parties' agreement that the court has jurisdiction to hear motions regarding the fees enumerated in ¶¶B.18 and A.12.

[15]The plaintiffs argue that the defendants requested that the phrase "without costs" be incorporated into the stipulation of dismissal and point the court's attention to earlier drafts. The plaintiffs, however, concede that the agreement is unambiguous. (Tr. 8/15/06 at 38-39.) The court agrees that the language of the settlement agreement is unambiguous and therefore confines its review to the text.

[16]In this case, where the parties enumerated agreed upon attorney's fees, it is unclear how the parties could stipulate to dismiss the case "without costs."

fees, the Second Circuit in <u>Valley Disposal</u> noted that, <u>inter alia</u>, the parties' stipulation did not state that dismissal was "without costs to either party."[17] In that case, the agreement did not address attorney's fees. The phrase was relevant in determining whether the parties intended to waive attorney's fees. In this case, where the agreement expressly specifies an award of attorney's fees and reflects an intention to effect a complete resolution of plaintiffs' attorney's fees, its absence is not dispositive.

Upon consideration of the express language of the settlement agreement, the court concludes that the parties intended ¶B.18 to be a complete settlement of the plaintiffs' attorney's fees. Accordingly, the plaintiffs are not entitled to additional attorney's fees.

III. <u>Conclusion</u>

For these reasons, the court recommends that the plaintiffs' motion for attorney's fees and costs (doc. #76) be denied.

Any party may object to this recommended ruling within ten days after being served with the report and recommendation. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates, United States District Court for the District of

---

[17]The Second Circuit stated that a party may express its intent to waive attorney's fees by using broad language to effect a mutual release of claims and accompanied by a stipulation that the case be dismissed "without costs to any party." 71 F.3d at 1058.

16

Connecticut. Failure to timely object to a magistrate judge's report may operate as a waiver of any further judicial review of the decision. <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992).

Dated at Hartford, Connecticut this 1st day of September, 2006.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge